Edward A. CHENOT

v.

Nancy BORDELEAU, Director of Rhode Island Department of Human Services.

No. 88–173–M.P.

Supreme Court of Rhode Island.

July 12, 1989.

Anthony R. Mignanelli, Lauren E. Jones, Jones & Aisenberg, Providence, for plaintiff.

James E. O'Neil, Atty. Gen., Terence J. Tierney, Asst. Atty. Gen., Providence, for defendant.

## OPINION

KELLEHER, Justice.

The issue raised by this administrative appeal is whether the interest of Edward A. Chenot (Edward) in a trust was properly considered a resource by the Department of Human Services (DHS) for the purpose of administering its medical-assistance program. The uncontroverted facts are substantially as follows.

Edward is a mildly retarded adult. In 1977 his father, Albert J. Chenot (the father), executed a last will and testament that left the majority of his estate, including the family residence, in trust. The will named the Pawtucket Trust Company as trustee and provided in pertinent portion that

"[t]he trustee may at any time or times pay all or any portion of the net income or principal or both net income and principal of the trust to or for the benefit of my son, Edward A. Chenot, as the said trustee, in its sole and uncontrolled discretion, shall deem necessary or advisable for his comfort, support and welfare. Upon the death of my son, Edward A. Chenot, the trustee shall provide for and pay for all necessary funeral expenses out of the trust estate and the remainder after the payment of said expenses shall be divided equally among my children, * * * share and share alike.

"It is my intention that the trustee shall exercise its discretion primarily for

the benefit of Edward A. Chenot because of his special needs and circumstances." After the father's death in late 1977 Edward and his sister continued to reside in the family residence. However, in 1985 the sister realized that she was incapable of both maintaining the home and providing Edward with the care he required. Consequently the decisions were made that the home would be sold and Edward would be admitted to a facility where he would be taught the skills necessary for independent living.

On May 1, 1985, Edward was admitted to the Intermediate Care Facility for the Mentally Retarded operated by the Blackstone Valley section of the Rhode Island Association for Retarded Citizens (the facility). From this date until August 16, 1985, DHS considered Edward eligible for its medical-assistance program and paid the entire cost of the care provided by the facility. However, on this later date DHS's opinion regarding Edward's eligibility for medical benefits changed dramatically. This change occurred because on August 16, 1985, the family residence was sold. When the proceeds of the sale were placed in the trust, it contained over $42,000 of liquid assets. Upon learning of the trust's enhanced status, DHS immediately terminated Edward's medical-assistance benefits. The rationale for this termination relied on a portion of DHS's manual that provides that disabled applicants for medical assistance are ineligible if they possess resources in excess of $4,000. The DHS considered the trust assets Edward's resources and terminated his benefits.[1]

Soon after this termination occurred, Edward requested and received an administrative hearing. The DHS appeals officer sustained the termination on the ground that "the funds in the trust, * * * are available to be utilized for the comfort, support and welfare of [Edward]." Following this decision, Edward sought Superior Court review pursuant to G.L.1956 (1988 Reenactment) § 42–35–15. The Superior Court justice considered many factors, including the cir-

cumstances surrounding the creation of the trust, the intent of the father, and the expected duration of Edward's hospitalization and reversed the appeals officer's holding. The DHS, acting pursuant to § 42–35–16, petitioned this court for a writ of certiorari. The petition was granted on September 8, 1988.

The issue of whether DHS can consider the assets of the instant trust as Edward's resources is a question of law. Although this court may "not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence concerning questions of fact," we may freely review questions of law " 'to determine what the law is and its applicability to the facts.' " *Carmody v. Rhode Island Conflict of Interest Comm'n,* 509 A.2d 453, 458 (R.I.1986). Even though we have never decided whether a beneficial interest in a trust can properly be considered a resource in determining eligibility for medical-assistance benefits, similar issues have been decided in other jurisdictions. *See Hoelzer v. Blum,* 93 A.D.2d 605, 462 N.Y.S.2d 684 (1983); *Lineback by Hutchens v. Stout,* 79 N.C.App. 292, 339 S.E.2d 103 (1986); *Lang v. Commonwealth Dept. of Public Welfare,* 515 Pa. 428, 528 A.2d 1335 (1987). These courts have based their decisions primarily upon the variety of the trust being considered.

■ The two varieties of trusts commonly encountered in the above-cited cases are the support trust and the discretionary trust. When a court decides that the benefit applicant is the beneficiary of a support trust, the trust assets are considered resources of the applicant. *In Re Will of Cooper,* 76 Misc.2d 166, 349 N.Y.S.2d 613 (1973); *Stoudt v. Commonwealth Dept. of Public Welfare,* 76 Pa. Commw. 576, 464 A.2d 665 (1983). However, if the trust involved is a discretionary trust, courts hold that its assets are not assets of its beneficiary. *Application of Yan Manor*

---

1. Although the father's home had been an asset of the trust since his death, its value only became a "resource" upon its sale because a por-

tion of DHS's manual specifically excludes a home in which the applicant is living from the definition of "resource."

*Nursing Home, Inc.*, 96 Misc.2d 463, 409 N.Y.S.2d 201 (1978).

■ A support trust directs the trustee to apply the trust's income and/or principal as is necessary for the support, maintenance, education, and welfare of the beneficiary. *First National Bank of Maryland v. Dept. of Health and Mental Hygiene,* 284 Md. 720, 725, 399 A.2d 891, 893 (1979); Restatement (Second) *Trusts* § 154 (1959). The beneficiary of a support trust can compel the trustee to make a distribution of trust income or principal merely by demonstrating that the money is necessary for his or her support, maintenance, education, or welfare. *Id.*

■ The discretionary trust allows the trustee complete and uncontrolled discretion to make allocations of trust funds if and when it deems appropriate. *First National Bank of Maryland,* 284 Md. at 725, 399 A.2d at 894. Because the trustee is given such broad powers, the beneficiary can only compel the trustee to distribute funds if it can be shown that the trustee is abusing its discretion by acting arbitrarily, dishonestly, or improperly in regard to motive in denying the beneficiary the funds sought. *Town of Randolph v. Roberts,* 346 Mass. 578, 579, 195 N.E.2d 72, 73 (1964); *Lineback,* 79 N.C.App. at 297, 339 S.E.2d at 106.

■ As our discussion indicates, the task of finding a solution to this controversy would be simplified if the father had created either a support or a discretionary trust. However, a review of the language employed by the father indicates that he created an amalgamation of the two. Such a creation requires us to determine the legal significance of the words utilized by the father.

The primary emphasis of the father's will was that the trustee was to have "sole and uncontrolled discretion" to administer the trust. In fact on no fewer than six occasions the will granted the trustee sole discretion. Despite this obvious emphasis, DHS argues that the language concerning Edward's "comfort, support, and welfare" negates the trustee's discretion and converts the instant trust into a support trust. We disagree.

The language relied upon by DHS merely directs the trustee to exercise its discretion on Edward's behalf. The trustee is in no way required to provide a specific type of support to Edward. The trustee is only required to make disbursements of trust assets that it deems "necessary or advisable for [Edward's] comfort, support, and welfare." Since we find this language to be an insignificant limitation on the trustee's discretionary powers, we hold that the father's words created a discretionary trust.

■ This court, in the case of *Stone v. Westcott,* 18 R.I. 685, 687, 29 A. 838, 839 (1894), recognized a discretionary trust and held that the trustees are the sole judges of the propriety of applications for funds. "So long as they act in good faith, their exercise of the discretion or refusal to exercise it cannot be controlled by the court." *Id.* In the instant case the trustee refused to apply trust funds toward Edward's expenses at the facility. In a letter from the trustee to the facility, the trustee stated that it intended to distribute trust assets over a long period so as to help Edward live independently. Accordingly it refused to pay the bill from the facility, saying that doing so would exhaust the funds and run contrary to the intent of the trust. In light of *Stone* we cannot hold that the trustee erred in refusing to pay the facility's bills.

■ For the reasons stated, DHS erred when it considered the assets of the trust as Edward's resources. The DHS's petition for certiorari is denied and dismissed. The writ previously issued is quashed, and the record in the case is returned to the Superior Court with our decision endorsed thereon.