[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
AMENDED DECISION
Defendant has moved the court to reconsider and amend its January 8, 1992 decision in the above-captioned case. Defendant's motion will be treated as a motion to amend judgment pursuant to R.C.P. 59. This court's original decision reversed a decision of the Rhode Island Department of Human Services. After consideration of counsel's memorandum, the court amends the judgment previously entered as follows. This amended decision pertaining to an appeal from a decision of the Rhode Island Department of Human Services (hereinafter "DHS") incorporates and supersedes the court's January 8, 1992 decision regarding same. Jurisdiction in this Superior Court is pursuant to Rhode IslandGeneral Laws 1956 (1988 Reenactment) § 42-35-15.
I.
CASE TRAVEL-FACTS
On May 15, 1989 a DHS appeals hearing officer affirmed an initial DHS decision to deny plaintiff's application for Medical Assistance Benefits for the months of September through December, 1988. Plaintiff here requests that this court reverse the decision of the hearing officer.
Plaintiff is a mentally retarded resident patient of a long-term care group home managed by Ocean State Community Resources, Incorporated (hereinafter "Ocean State"). From 1985 until September 19, 1988, when application for Medical Assistance Benefits was made on her behalf, plaintiff was a private patient whose care was supposed to be paid for by funds from her estate and a testamentary trust established for her benefit by her father.
Plaintiff's father left one-half of his estate in trust for the following purposes:
 To hold, manage, invest and reinvest, to apply all the income therefrom, or, if necessary, any portion of the corpus of this trust, for the care, maintenance, support, education, welfare, medical expenses and hospital expenses, for my daughter, Jo-Ann Michaele Doll, for and during the term of her natural life, and upon her death, after the payment of all her expenses of last illness and burial expenses . . . said trustee shall have full power and authority, in the good exercise of her discretion, to hold and retain as a trust investment any or all of the property, real, personal or mixed, which comes into her hands as part of the original corpus of this trust, although the same may not be of the character of investments permitted to trustee by law. She shall also have full power to sell such property, or any part of it, from time to time, and to invest and reinvest in such property and interests as she shall see fit, although the same may not be of the character permitted for trustees' investments by law.
Until April, 1988, the monies held in her estate and the trust were sufficient to allow the guardian/trustee to fully compensate Ocean State for its services to plaintiff. In April, 1988, however, in order to comply with a state rate-setting procedure, Ocean State retroactively increased the monthly rate for plaintiff's care. The increase resulted in an arrearage of $69,572.37 for care received prior to April 1, 1988. By then, plaintiff's estate had been depleted. On May 13, 1988, the testamentary trust sold its last remaining asset, stock, for $80,363.51. As a result of this sale, the trust incurred federal and state tax liabilities in the amount of $16,800.
Although the trustee used some of the proceeds of the sale to pay off a portion of the arrearage, she did not apply the whole trust corpus towards that debt. She retained $16,800 which she earmarked for the payment of the state and federal taxes due on account of the sale. She also retained and earmarked $10,000 which she offered to Ocean State in settlement of the remainder of the outstanding arrearage and the unpaid services from June 1, 1988 to December 31, 1988. Pursuant to the settlement agreement, Ocean State's claim for unpaid services was not extinguished, but the provider agreed not to attempt to collect from the trustee unless overreaching could be established. The trustee did not actually disburse the funds for the federal and state taxes or the Ocean State settlement fee until late December, 1988. From September through December, 1988, the earmarked funds were basically all that remained in the trust.
Ocean State continued to provide care to plaintiff after April 1, 1988, even though it was not being paid. Plaintiff's total debt for medical care increased accordingly. On September 12, 1988, Ocean State notified the trustee that in light of plaintiff's increasing debt and the trustee's claim that no further assets were available in the trust for the benefit of plaintiff, Ocean State would take steps to remove plaintiff from its facility unless her eligibility for Medicaid was immediately established. In response, the trustee initiated legal action on behalf of plaintiff to prevent the termination of services or her eviction from the group home. The trustee also, on September 19, 1988, filed the application for Medical Assistance Benefits which is presently before this court.
On December 20, 1988, the DHS resource unit administrator determined that plaintiff was ineligible to receive benefits for September through December, 1988, because her countable resources exceeded the $4,000. resources limit. The administrator based his decision on his determination of the following: as of September 1, 1988, the plaintiff's trust held $30,492.28; as of October 1, 1988, $30,772.31; as of November 1, 1988, $22,241.51; and as of December 1, $23,241.51. In ruling that those funds constituted a countable resource for each of those months, the administrator found
 [T]here was no legal impediment upon the trustee from accessing these funds for the use of the applicant. Therefore they are a countable resource. The $10,000 for the nursing home, $14,000 to IRS and $2,800 to Rhode Island Division of Taxation are not a lien or encumbrance on these funds and are within the authority of the trustee to have paid them on or before September 1, 1988. (Tr. exhibit 19).
Plaintiff requested a DHS administrative hearing which took place on March 23, 1989. On May 15, 1989, the DHS hearing officer upheld the initial decision. He also affirmed a resource unit administrative decision which provided that the plaintiff became eligible for benefits effective January 1, 1989, after the trustee had disbursed $14,000 to the IRS, $2,800 to the State, and $10,000 to Ocean State, thereby reducing her countable resources to below the $4,000 limit.
Plaintiff appealed to this Superior Court on June 13, 1989. She argues that the monies earmarked by the trustee for the payment of federal and state tax liabilities and for the payment of a settlement fee to Ocean State were not countable resources available for the benefit of the plaintiff during the months of September through December, 1988. Furthermore, she argues that the testamentary trust established for plaintiff is a discretionary trust which creates a legal impediment on said trust funds.
II.
APPELLATE REVIEW PURSUANT TO G.L. § 42-35-15
Section 42-35-15 provides in part:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Accordingly, when reviewing an agency decision, the court must not substitute its judgment for that of the agency with respect to the credibility of the witnesses or weight of the evidence concerning questions of fact. Costa v. Registry of MotorVehicles, 543 A.2d 1307 (R.I. 1988). Even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than did the Agency (Cahoone v. Board of Review, 104 R.I. 503, 506, 246 A.2d 213
(1968)), it must uphold the agency decision if it finds any competent evidence upon which the Agency decision rests. E.Grossman and Sons, Inc. v. Rocha, 118 R.I. 276, 373 A.2d 496, (1977). Alternatively, the court may vacate the Agency decision if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the record. Thus the court will reverse factual findings of an administrative agency only when they are devoid of competent evidentiary support. Milardov. Coastal Resources Management Council, 434 A.2d 266, 270 (R.I. 1981).
III.
THE DHS DECISION
The first issue for this court to consider and resolve is whether or not the DHS erred in its decision that plaintiff's testamentary trust held countable resources in excess of $4,000 for the months of September through December, 1988. In this appeal plaintiff argues, as she did before the DHS hearing officer, that the trust funds which were earmarked by the trustee to pay off tax liabilities and a settlement obligation should be excluded from her countable resources.
In order to qualify as medically needy, an applicant may not have available resources in excess of $4,000. The resource determination is made as of the first moment of the first day of the month in which the application is filed. There is no dispute among the parties that as of the first of the months of September through December 1988, the balance in plaintiff's trust account was in excess of $20,000. There is also no dispute that during those months there existed federal and state tax liabilities, as well as indebtedness to the provider, Ocean State, that far exceeded the trust corpus. Unfortunately for plaintiff and more particularly for the provider here, the applicable DHS regulations in effect in December, 1988, provide no relief to an applicant in such a position.[1]
Pursuant to the then applicable DHS Agency Policy Manual regulations, the funds held in plaintiff's trust account are categorized as nonexcluded intangible personal property. All such monies are included as countable resources. Resources are diminished only when they are actually expended. The regulations are totally silent as to indebtedness and there are no provisions which allow an applicant to deduct medical or tax liabilities from her countable resources. Pursuant to these regulations, an applicant may not, as did plaintiff here, retain excess resources indefinitely and delay payment of outstanding obligations. Rather, the applicant is placed on notice that she is required to expend her resources before she can establish eligibility.
This rule appears to be especially harsh here where the applicant subsequently verified that she did indeed expend the excess resources retained from September through December in order to pay off the long existing medical and tax obligations. However, when ruling on her application for eligibility, the Agency had no more than the trustee's verbal assurances that the funds would be expended in this manner. Plaintiff's position might have been strengthened if the earmarked funds had been placed in a segregated escrow account for the specific purpose of paying off the existing obligations. In that case the funds would no longer have been available to plaintiff. Where, however, the earmarked funds remained in the trust account, pursuant to the Agency's literal reading of the then applicable regulation, they continued to be available to plaintiff until they were expended.
The court finds that as regulation § 0324 was not yet effective for the months of September through December, 1988 the DHS properly determined that plaintiff had countable resources in excess of the resource limit for same time period. In so doing this court rejects plaintiff's argument that § 0324 be given retrospective application. To support this argument plaintiff submits case law wherein our Supreme Court ruled that certain procedural or remedial statutes could be applied retrospectively. See Wayland Health Center v. Lowe, 475 A.2d 1037 (R.I. 1984),Spagnoulo v. Bisceglio, 473 A.2d 285 (R.I. 1984), Fox v. Fox,115 R.I. 593, 350 A.2d 602 (1976). However, this argument fails in the instant case for several reasons. First, plaintiff presents no case law or other legal authority which supports the retrospective application of an administrative regulation, in light of the notice and hearing requirements of the Administrative Procedures Act. Nevertheless, even if this court assumes, arguendo, that the rules concerning retrospective application of procedural statutes can be applied to an administrative regulation, plaintiff's argument fails here for the following reasons. Our Supreme Court has not stated that procedural or remedial statutes are always to be given retrospective effect. Rather, the Court stated that procedural or remedial statutes are to be given retrospective application only when it may be ascertained, either by express language or necessary implication, that the legislature so intended. Because the instant case involves an administrative regulation rather than a legislatively enacted statute, the relevant issue here is not a matter of legislative intent. Rather, the relevant intent at issue here is that of DHS, the agency which drafted § 0324 and which is a party to this case. DHS argues that it never intended that § 0324 be retrospectively applied. Indeed the regulation is devoid of any express language, or any language from which it may reasonably be implied, that the resource reduction provisions should be given retrospective effect. Accordingly, in the absence of any administrative intent to the contrary, this court must give § 0324 prospective application only.
The second issue for the court to determine is whether the testamentary trust established for plaintiff by her father was a support trust or a discretionary trust. A discretionary trust allows the trustee complete and uncontrolled discretion to make allocations of trust funds if and when it deems appropriate.Chenot v. Bordeleau, 561 A.2d 891, 893 (R.I. 1989). The trustee of such a trust may elect not to use the income or principal for the beneficiary. When a benefit applicant is the recipient of a discretionary trust, the trust's assets are not considered as resources available to plaintiff for purposes of determining her eligibility for medical assistance benefits. On the other hand, a support trust is one which directs the trustee to apply the trust's income and/or principal as is necessary for the support, maintenance, education, and welfare of the beneficiary. Id. at 894. The beneficiary of a support trust can compel the trustee to make a distribution of trust income or principal merely by demonstrating that the money is necessary for his support, maintenance, education, or welfare. Id. When a benefit applicant is the beneficiary of a support trust, the trust assets are considered resources of the applicant. Id. at 893.
In the instant case, as in Chenot, the language employed by the father indicates that he created an amalgamation of a support trust and a discretionary trust. When faced with such a creation the court in Chenot determined that the primary emphasis of the will was that the trustee was to have "sole and uncontrolled discretion" as evidenced by the fact that on no fewer than six occasions did the will grant the trustee sole discretion.
In the instant case, however, the primary emphasis of the father's will is on providing for the support of plaintiff. The father specifically states in his will that his purpose in establishing the trust was "for the care, maintenance, support . . . for my daughter."
The language relied on by plaintiff does grant the trustee discretionary powers regarding the management of the trust funds. However, the trustee is clearly required to apply the trust income or corpus for plaintiff's benefit only. There is no language in the will which negates this requirement or which allows the trustee to use the trust funds for any other purpose or beneficiary. Furthermore the trustee is required to provide a specific type of support to plaintiffs: care, maintenance, support, education, welfare, medical expenses, and hospital expenses. Accordingly, the court finds that the father's words effectively created a support trust.
For the reasons herein stated, the DHS Administrative Hearing Decision dated May 15, 1989 is affirmed.
Counsel will prepare appropriate judgment for entry by the court.
[1] The DHS has since adopted regulations which allow an applicant, under certain circumstances, to establish eligibility as of the date that her medical or tax expenses equal or exceed her resources. DHS Agency Policy Manual § 0324. This court incorrectly relied on § 0324 in its January 8, 1992 decision.