[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an administrative appeal from a decision of the Rhode Island Department of Human Services (DHS) denying Clara Liebling (appellant) medical assistance. Jurisdiction in this court is pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTS/TRAVEL
Appellant filed an application with DHS for medical assistance benefits on October 6, 1987. On the application she listed three bank accounts, two of which she contends were irrevocable trust accounts established by appellant as trustee for her daughter, Ms. Ann Teifeld. DHS rules provide that all bank accounts held in an applicant's name are presumed to be owned by the applicant. DHS Policy Manual Rule 301.2(c)(2)(b)(2). Agency rules provide further that transfers of non-excluded funds within 24 months of the date of application are presumed to have been for the purpose of establishing eligibility for benefits. DHS Policy Manual Rule 301.2(3). Appellant provided evidence of the trust agreement with her daughter in an attempt to rebut the agency's presumption of ownership. In November of 1987 appellant was advised the rebuttal was unsuccessful and she promptly requested a hearing.
The hearing took place on January 20, 1988. At the hearing Ms. Ann Teifeld testified that in 1972 appellant deposited money into an account at Dollar Savings Bank in Pittsburgh. The name on the account was Clara Liebling ITF Ann Liebling Teifeld. ITF stands for "in trust for." (Trans. p. 4-5). Testimony established that appellant's intention was to provide her daughter with some measure of financial security and the funds were used solely for Ms. Teifeld's benefit (Trans. 7). Bank records were introduced as evidence indicating that between 1972 and 1987 withdrawals from the Dollar Savings account totaled $2085. Ms. Teifeld stated that in 1979 her mother withdrew $2000 and deposited it in a CD account. In 1983 her mother gave her those funds to be used for a trip to Europe. (Trans. 7). Testimony also established appellant was the sole depositor of the funds in the account, and the balance in 1987 was $30,200.73 (Trans. 17).
Ms. Teifeld testified further that appellant opened a second account for her daughter's benefit at Pittsburgh National Bank (Trans. 10). The Pittsburgh National account was held in the name Clara Liebling ITF Ann Barbara Liebling Teifeld. (Trans. 10). Appellant was the sole depositor of funds into that account and in 1987 the balance was $12,373.76. (Trans. 10). Bank records demonstrated there were no withdrawals from this account in 1986 or 1987. Ms. Teifeld reported that both she and her mother considered the money to belong to Ms. Teifeld. (Trans. 11).
Ms. Teifeld stated that appellant maintained a personal checking account at Union National Bank in Pittsburgh and that account was held in the name Clara Liebling or Ann Liebling Teifeld. This account was appellant's working account, with which she managed her personal finances. (Trans. 11). It was established that appellant maintained all three accounts in her own social security number and reported the interest from all three accounts on her tax returns. (Trans. 12).
In July of 1987 Ms. Teifeld closed the trust account in Pittsburgh and withdrew $6,000 from her mother's checking account. She moved the funds to Columbus Credit Union in Rhode Island. (Trans. 14). The record is not clear as to exactly how the funds were transferred to Columbus. At the hearing Ms. Teifeld stated there were two accounts at Columbus; a checking account in joint names and a savings account in her name only. (Trans. 23-24). In her corroborative statement Ms. Teifeld stated, "In July of 1987 I took out the sum of $6,000 from this account which had a previous balance of approximately $7,600 and put that money together with the proceeds from the Dollar Savings Bank account and the Pittsburgh National Bank account into an account at the Columbus Credit Union, Warren, Rhode Island. Shortly thereafter all of this money was placed into an account at Columbus Credit Union in my name only." Appellant introduced into evidence the form authorizing deletion of appellant's name from the joint account at Columbus. The number on that form is identical to the number on the savings account and is dated 10-2-87. Records also indicate withdrawals of $4,000 and $2,000 from the savings account and several checks written on the joint account to pay for appellant's care.
DHS issued the Hearing Decision on 2-29-88 and contended appellant failed to adequately rebut the presumption of ownership with respect to the trust funds. (Trans. 17). The evidence indicated the trust accounts originated with appellant's funds. Appellant was the sole depositor into the trust accounts. As trustee, only appellant could access the funds. According to the contract between appellant and the Dollar Savings Bank, the funds deposited in trust would become Ms. Teifeld's upon the death of appellant, but remain subject to appellant's control during her lifetime. (Trans. p. 17).
DHS contended further, that because the funds were nonexcludable, under DHS rules any transfer within 24 months of the application for assistance is presumed to have been for the purpose of establishing eligibility. Because appellant failed to rebut this presumption the funds were included as resources available to appellant, thus disqualifying her for medical assistance.
Appellate Review
This Court's review of DHS's decision is governed by Section42-35-15(g) of R.I. General Laws which provides in part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing an agency decision this Court will not substitute its judgment for that of the agency with respect to the weight of evidence or credibility of witnesses. Costa v.Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988);Carmody v. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). Our review is confined to a search of the record for any legally competent evidence to support the decision.Berberian v. Department of Employment Security, 414 A.2d 480, 482 (R.I. 1980). Factual conclusions will be reversed only when they are totally unsupported by competent evidence in the record.Milardo v. Coastal Resources Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981).
On appeal appellant contends she successfully rebutted the presumption of ownership with evidence the trusts were irrevocable. Alternatively, appellant asserts that the agency presumption regarding transfer of funds is invalid.
COUNTABLE RESOURCES
Pursuant to DHS Policy Manual, Sec. 0312, I, in order for resources or income to be countable in the determination of medical assistance eligibility, they must be available to the client. Income or resources are available ". . . both when actually available, and when the client has the legal ability to make such sum available for support and maintenance within the budget period." However, same income or resources are not considered available ". . . when a legal impediment exists which precludes the client from making the income or resource available." Sec. 0312, II. One type of legal impediment specifically listed in same DHS regulation is the type wherein ". . . the funds are held in trust for the client by another person." Sec. 0312, III. With respect to trust the DHS regulations further provide that language in a bank account title which typically restricts access (for here Mary Smith, only) is "In trust for John Jones and Mary Smith, subject to the sole order of John Jones, balance at death of either to belong to the survivor." Sec. 0324, III (B)(2)(f).
According to DHS policy with respect to the determination of unrestricted access to funds or accessibility, such a determination ". . . does not fall upon the individual but depends upon the Legal Structure of the account." Sec. 0324, III (B)(2)(f). Accordingly, if the applicant is a joint account holder who has unrestricted access to the funds in the account, all the funds in the account are presumed to be the resources of the applicant." In other words, the legal structure such as "joint checking account," creates the legal presumption of unrestricted access for either account holder.
However, pursuant to DHS policy, such a presumption may be rebutted. Pursuant to Sec. 0324, II (B)(2)(g), entitled "Rebuttal of Presumption of Ownership of a Joint Account," "[t]here may be a situation where an individual has unrestricted access to the funds in a joint account but does not consider himself/herself an owner of the funds . . .," as for example where the individual declares that when she has withdrawn funds from such an account, ". . . the funds were used for or given to the other account holder. . . ." Pursuant to Sec. 0324, III (B)(2)(h), entitled "Evidence Necessary For a Successful Rebuttal," all of the following evidence is required: i. an AP-92 statement essentially detailing the history and purpose of the account; ii. an AP-92 A corroborating statement form from the other account holder or beneficiary; iii. evidence of the establishment of a new account in the applicant's name and containing the applicant's fund or deletion of the applicant's name from the subject account; and iv. ". . . all available documentary evidence to support the statements in the AP-92 and AP-92 A9." Essentially, the DHS Manual provides that accessibility or ownership may in accordance with Sec. 0324, III (B)(2)(h) be rebutted by a person who pursuant to the "legal structure" of the account possesses unrestricted ownership but doesn't exercise such ownership rights because he or she in fact doesn't possess them, or because he or she subjectively doesn't consider himself or herself to have them.
THE SUBJECT ACCOUNTS
With respect to the petitioner's/applicant's subject accounts in the applicant's name in trust for her daughter, the legal structure creates the presumption of a trust, and given the savings account form of the trust, a Totten Trust. A Totten Trust has been defined by the Rhode Island Supreme Court as ". . . a deposit in trust by the settlor of his own money for the benefit of another." Green v. Green, 559 A.2d 1047, 1049 (R.I. 1989) (quoting Black's Law Dictionary, 356 (West 5th ed. 1979)). Furthermore, the creation of a valid Totten trust requires retention of the subject matter of the trust by the settlor or the trustee for the benefit of the named beneficiary. Id.
(quoting Petition of Atkinson, 16 R.I. 413, 415-16, 16 A. 712, 713 (1889)). Additionally, during the settlor's lifetime, the trust is revocable, and the settlor may use the funds for his own benefit. Green, 559 A.2d at 1049. "Upon the settlor's death . . ., the trust becomes irrevocable and is the exclusive property of the beneficiary." Id. (quoting Peoples Savings Bank v. Webb,21 R.I. 218, 42 A. 874 (1899)). Critical to the validity of such a totten trust, however, is the settlor's intention. Green, 559 A.2d at 1050. The creation of a valid totten trust is a question of intention and, therefore, a question of fact." Id. Although pursuant to § 42-35-15, this Court may not substitute its judgment for that of the agency regarding the weight of the evidence regarding questions of fact, this court may properly review questions of law to determine the law's applicability to the facts. Chenot v. Bordeleau, 561 A.2d 891, 893 (R.I. 1989). In Chenot, our Supreme Court held that the issue of whether the DHS could consider trust assets as resources of a medicaid applicant was a question of law. Id.
In the case at bar, the legal structure of the account creates a rebuttable presumption that a totten-like trust was created. However, ". . . merely making a deposit in trust for another . . . is not conclusive evidence of the intent to create a trust." Slepkow v. McSoley, 54 R.I. 210, 213, 172 A. 328, 329 (1934). Additionally evidence determinative of intent are ". . . statements made by the donor in regard to the account as well as [the donor's] conduct with reference to it." Malley v. Malley,69 R.I. 407, 412, 4 A.2d 761 (1943). Malley involved a bank account trust, the account title for which was "Patrick J. Malley, trustee for Delia Malley." After the death of the settlor/trustee, Delia Malley as presumed "sole" beneficiary, withdrew all the money from the account. Thereafter, Patrick's two sons challenged the presumption of Delia's being the sole beneficiary of a trust, successfully arguing that the settlor/trustee had intended that Delia, once she received the money, was to divide same equally among the three. Despite the trust form of the account, the court held that the father did not intend to, and did not create a trust when he opened that account. The evidence on which the Court relied to rebut the ". . . prima facie case of the creation of a trust" were the statements of the donor — namely that he considered the money in the account to belong to him and that such money was not to go to his daughter until after his death -, the daughter's own corroborating testimony of the donor's statements, and further, the donor's withdrawal from said account for his own needs.
Section 58 of the Restatement of Trusts, entitled "Tentative Trust of Savings Deposit" provides that "[if] a person makes a savings deposit in a bank in his own name "as trustee" for another person his intent may be either (1) to create a revocable trust, or (2) to create an irrevocable trust, or (3) not to create a trust." Restatement Second of Trusts, § 58, Comment a. (1959). As there is "ambiguity or doubt" as to what the depositor intended, parole evidence is admissible to show the donor's intent. The intent of the donor ". . . can be shown by the statements, declarations, admissions, acts, and conduct of the parties, at the time of as well as after the deposit. In ReFurjanick's Estate, 375 Pa. 484, 100 A.2d 85, 88 (1953). Evidence demonstrating that the donor of such a bank account trust intended to create an irrevocable trust have included a donor's telling the beneficiary of his or her specific intent (Atkinson, 16 R.I. at 412); minimal activity on the trust account by the donor (Green, 559 A.2d at 1049); and the depositor's making withdrawals for the beneficiary but none for his own use. Ackerman Estate, 34 Pa. D. C.2d 413, 417 (1964).Ackerman involved a bank account entitled "David Ackerman, in trust for Rosalie Paula Ackerman (child)." The court noting that the ". . . father, by word and deed, clearly expressed his intention that these savings accounts were solely for [the daughter's] benefit" found he intended to create an irrevocable trust to arise immediately. Id. at 416.
DHS regulations specifically provide that an applicant for medical assistance eligibility may rebut successfully the presumption of full or partial ownership of income or resources. The record before this Court reveals that two of the three subject bank accounts listed on Mrs. Liebling's application were entitled, "Clara Liebling in trust for Ann Liebling Teifeld." Daughter Ann Teifeld testified that her mother opened the Dollar Savings Bank account in 1972 in Pittsburgh to provide her daughter with a "security blanket" (Trans. at 6), as Mrs. Liebling had become a widow in 1949 when her daughter was one year old. This account was closed on October 2, 1987, at which time Mrs. Liebling legally deleted her name from the account title. The balance in the account at this time was $30,200.73 (Trans. at 17). From 1972 to 1977, Mrs. Liebling made seven withdrawals totalling $2,085.06. "Virtually" the entire withdrawal, $2,000., was given to her daughter to take a European trip.
Mrs. Liebling additionally opened a second account, entitled "Clara Liebling in Trust for Ann Barbara Liebling Teifeld" at Pittsburgh National Bank. No money was withdrawn from this account until its closing in 1987, at which time the balance was $12,373.96. The daughter testified that the money in this second account was always considered hers.
Mrs. Liebling, now confined to a nursing home stated in a sworn affidavit (AP-92) that her statement ". . . [was] the same and incorporates everything my daughter said." Mrs. Liebling attached a copy of her daughter's statement of October 1987 along with her application. The daughter's statement in relevant part provides that with respect to the Dollar Savings Bank account, "[my] mother and I agreed to set up an account with her as Trustee and myself as beneficiary." (AP 92-A). Furthermore, the daughter stated that "[i]t was always understood between the two of us that this was my money." With respect to both the Pittsburgh National Bank account and the Dollar Savings Bank accounts, Ann stated in her affidavit that ". . . it is both my mother's and my contention that the accounts . . . were true Trust Accounts as my mother never used any of this money for her own benefit and these accounts were always intended for my benefit. . . ." The lack of withdrawal from the Pittsburgh National Bank account coupled with the $2,000.00 withdrawal from the Dollar Savings Bank for Ann's European trip support Mrs. Liebling's and Ann's corroborating statements and constitute evidence of Mrs. Liebling's intent to create irrevocable trusts for the benefit of her daughter. These two accounts with respect to their titles as well as their activity, are in marked contrast to the third account, a joint checking account entitled "Clara Liebling or Anne Teifeld, "at Union National Bank in Pittsburgh. It was from this joint checking account that Mrs. Liebling paid her bills and thus used the money for herself.
Additionally, the Dollar Savings Bank and Pittsburgh National Bank accounts were closed by the daughter, not by the depositor, in July of 1987. The proceeds from both accounts totalling $42,604.34, together with six thousand dollars from Mrs. Liebling's checking account, temporarily went into a joint share account at Columbus Credit Union on July 24, 1987. However, shortly thereafter, on October 2, 1987, Mrs. Liebling deleted her name from this account, further evidence that the settlor had intended the trust to be irrevocable prior to her death.
The only evidence before the agency that Mrs. Liebling intended to create a revocable trust is the wording of the bank account title. However, pursuant to its own regulations, such a presumption of revocability and accessibility may be successfully rebutted. The record is devoid of any evidence that Mrs. Liebling used or intended to use the subject monies for herself, and with respect to the $30,200.73 account at the Dollar Savings Bank, that dearth of evidence spanned a fifteen year period. Furthermore as no separate trust documents accompanied these trust accounts, the applicant's and the beneficiary's conduct and statements with respect to these accounts provide evidence of the donor's intent.
For the reasons herein set out, this Court finds that the decision of the DHS is clearly erroneous in view of the competent evidence contained in the whole record and is affected by error of law. The agency's finding that pursuant to Section 0324 (B)(2)(h) Mrs. Liebling did not successfully rebut the legal presumption of unrestricted access to the subject funds is not supported by the evidence of record. Accordingly, the agency's decision finding that $42,604.34. were available resources to the applicant constitutes error of law and is hereby reversed.
Counsel shall submit the appropriate judgment for entry.