[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from the decision of the Rhode Island Commission for Human Rights entered on November 15, 1991 pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTS/TRAVEL
On February 11, 1988, Rosemary R. Hobson (hereinafter Ms. Hobson) filed a complaint against the South Kingstown School Committee, (hereinafter School Committee) jointly and severally with the Rhode Island Commission for Human Rights (hereinafter the Commission). Ms. Hobson contended that the School Committee discriminated against her with respect to her handicap in violation of G.L. § 28-5-7.
On October 31, 1989 and February 28, 1990, hearings on the complaint were held before the Commissioner Cleon E. Harvey. On November 15, 1991, the Commission entered its decision and order, concluding that:
 I. A violation of R.I.G.L. § 28-5-7 having been found the Commission hereby orders the respondent:
 A. To cease and desist from all unlawful employment practices in violation of Rhode Island General Laws Section 28-5-7;
 B. To offer the complainant a three month trial teaching period in a kindergarten class, as described above, which includes accommodation to her handicap, including but not limited to, payment of up to $500 to a rehabilitative team (selected with the agreement of both parties) and which commences as soon as possible but no later than September 1992;
 C. To afford such other relief which will be determined after a hearing. (Decision and Order, at 10.)
In its decision and order, the Commission made the following pertinent findings. Ms. Hobson was employed by the South Kingstown School Committee as a kindergarten teacher for thirteen years before being terminated on April 1, 1987. She taught kindergarten from 1983 to 1985. During the 1983-1984 school year, Mr. Corcoran, the principal of the school where Ms. Hobson taught, advised her to make several specific changes to her teaching methods.
Upon reviewing Ms. Hobson's performance during the 1984-85 school year, Mr. Corcoran commended her for successfully achieving 75% of her goals. This evaluation also indicated that Ms. Hobson should examine her organizational skills. Later, in April, 1985, Ms. Hobson suffered a subarachnoid hemorrhage. Consequently, she stopped teaching for the remainder of the school year.
Tests administered on Ms. Hobson revealed that she had deficits in brain functioning relating to short term memory and flexibility in using new information. Two doctors testified that most of the recovery from this type head injury occurs within twelve to eighteen months of the date of injury. (Joint Exhibit C (Trans. 5/8/87 p. 74) and Joint Exhibit C, (Trans. 6/10/87, p. 29-30.) However, Ms. Hobson returned to teach kindergarten in September, 1985, only five months after sustaining the injury. Ms. Hobson assured the new principal of the school, Mr. Richard Hines, that she was capable of teaching. Mr. Hines observed Ms. Hobson both informally and formally throughout the school year. He noted several problems concerning Ms. Hobson's conduct in the classroom as well as areas where Ms. Hobson had improved significantly. At the end of the 1985-1986 school year, Ms. Hobson was not discharged. Instead, Mr. Hines recommended that Ms. Hobson be transferred to a sixth grade class where the students were more independent, and the class work was more structured. In September, 1986, Ms. Hobson taught the sixth grade for twelve days. Ms. Hobson asserted that her inability to teach sixth grade was due to her brain hemorrhage. As a result, Mr. Hines agreed with Ms. Hobson that she should go on medical leave for a period of time. Ms. Hobson also agreed to be seen by a physician chosen by the School Committee to determine if the hemorrhage was causally related to Ms. Hobson's teaching problems during the 1985-1986 academic year. Moreover, a determination as to what type of accommodations were necessary for Ms. Hobson to continue teaching would be made.
In 1987, Ms. Hobson was seen by Dr. Susan Soloway Spencer, a neurologist, and Dr. Kimberlee John Sass, a clinical neurologist. Relying on the tests conducted by Dr. Sass and her own medical examination, Dr. Spencer concluded that Ms. Hobson could teach sixth grade only if excessive and lengthy accommodations to her handicap were made. Moreover, Dr. Spencer explained that Ms. Hobson's ability to teach kindergarten in the future could be reasonably assessed by analyzing her performance during the 1985-1986 school year. Joint Exhibit C (Exhibit 7.)
Dr. Sass' report revealed that he considered Mrs. Hobson's injury significant enough to impair her ability to return to work as a school teacher. Joint Exhibit C (Exhibit 8). However, Dr. Sass, deferred to Dr. Spencer on the reliability of the above assessment. Joint Exhibit C (Exhibit 13.) Dr. Sass concluded that performance by an employee at the job in issue is the best method to assess a person's abilities. Joint Exhibit C, (Trans. 5/8/87 p. 182.)
In February 1987, Mr. Arthur B. Campbell, Superintendent of Schools, recommended that Ms. Hobson be dismissed for several reasons. Joint Exhibit C (Exhibit 1). A pretrial hearing was held on March 31, 1987 before the School Committee. The Committee dismissed Ms. Hobson relying on Mr. Campbell's concerns as well as the evidence regarding Ms. Hobson's medical condition. The School Committee further decided that reasonable changes to the work environment could not be made to accommodate Ms. Hobson's condition. This decision was upheld at a subsequent School Committee hearing.
Like Dr. Sass, Dr. Francis Raymond Spardeo, a neuropsychologist, testified that Ms. Hobson's problems during the 1984-85 school year were probably attributable to the fact that her recovery period had not ended. Joint Exhibit C (Trans. 3/31/87, p. 98.) He also asserted that performance on the job in question is the best method to assess one's capabilities. Joint Exhibit C (Trans. 3/31/89 pp. 98-99.) In fact, he noted that neuropsychological tests do not reveal an individual's ability to work at a particular occupation unless there are gross deficits. Joint Exhibit C (Trans. 3/31/89 pp. 98-99.) He explained that an assessment of Ms. Hobson's performance would be flawed where the employer is unaware of the extent of the brain damage and no rehabilitation program has been established for the employee. Joint Exhibit C, (Trans. 6/10/87, p. 21-22.)
Several letters from parents who had children in Ms. Hobson's classes were also admitted into evidence. In their letters, the parents criticized Ms. Hobson's teaching abilities. Joint Exhibit C. (Exhibits 16, 17, 18, 21-35.) Some of these letters concerned the sixth grade class that Ms. Hobson briefly taught subsequent to the brain hemorrhage. Both Dr. Spardeo and Dr. Spencer testified that Ms. Hobson was incapable of teaching a sixth grade class.
In his testimony, Mr. Hines stated that Ms. Hobson's termination was based, in part, on conduct that occurred within one year of the hemorrhage. Other reasons for Mrs. Hobson's dismissal were based on incidents occurring prior to the brain injury. Nevertheless, Mr. Hines further testified that Ms. Hobson's students tested at the same level as other students in the same grade.
The Commission for Human Rights concluded that Ms. Hobson has a handicap and that the School Committed terminated her because of this condition. Additionally, it was found that the School Committee failed to make reasonable accommodations to the condition in violation of G.L. 1956 (1988 Reenactment) §28-5-7(1)(D).
DISCUSSION
The review of a decision by the Commission for Human Rights Commission is controlled by G.L. 1956 (1988 Reenactment) §42-35-15 which provides:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
While the court is precluded from substituting its judgment for that of the agency regarding the credibility of the witnesses or weight of the evidence concerning questions of fact, Costa v.Registry of Motor Vehicles, 453 A.2d 1207, 1209 (R.I. 1988), this court "may freely review questions of law to determine what the law is and its applicability to the facts." Chenot v.Bordeleau, 561 A.2d 891, 893 (R.I. 1989); Carmody v. RhodeIsland Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986).
Section 28-5-7(1)(D) of G.L. 1956 (1988 Reenactment) states that "[i]t shall be an unlawful employment practice . . . [f]or an employer . . . to refuse to reasonably accommodate an employee's or prospective employee's handicap when the employer can demonstrate that the accommodation would pose a hardship on the employer's program, enterprise or business." In applying this statute to employment cases, the Rhode Island Supreme Court has held that "the trial justice . . . should look for guidance in this sensitive area to decisions of the federal courts in construing the Civil Rights Act of 1964." Newport Shipyard v.Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984).
In this case, the Commission applied the Americans with Disabilities Act of 1990 (ADA) and the regulations issued thereunder in determining whether reasonable accommodations could be made for Mrs. Hobson. After reviewing the record, this Court finds that the ADA and its regulations were relevant to the case at bar. Although the ADA took effect after the incident at issue occurred, it was not error for the Commission to examine whether reasonable accommodations could be made to Ms. Hobson's condition in light of this Act. The ADA, like the Rhode Island Act, attempts to discourage discrimination based on a handicap. Thus, the Commission properly considered the ADA's regulations when construing the Rhode Island Fair Employment Practices Act.
Further, the finding by the Commission that Ms. Hobson was discriminated against on account of her handicap is affirmed. Ms. Hobson's performance in the classroom prior to the injury did not compel the School Committee to terminate her. It was only after the injury was sustained and the School Committee recognized the extent of the damage that Ms. Hobson was discharged. Accordingly, it was well within the discretion of the Commission to hold there was illegal discrimination based on a handicap.
For the reasons herein, the decision of the Commission for Human Rights is affirmed.