INDIANA DEPARTMENT OF STATE REVENUE, INHERITANCE TAX DIVISION, Appellant (Petitioner Below),

v.

ESTATE OF Robert E. NICHOLS, Sr., Appellee (Respondent Below).

No. 41T10–9506–TA–00054.

Tax Court of Indiana.

Dec. 14, 1995.

Pamela Carter, Attorney General, Kathryn Symmes Kirk, Deputy Attorney General, Indianapolis, for Appellant.

James F.T. Sargent, Sargent & Meier, Greenwood, for Appellee.

FISHER, Judge.

The Indiana Department of Revenue, Inheritance Tax Division (the Department) appeals the Johnson County Superior Court's (the Probate Court) February 1995 order denying the Department's petition for rehearing, reappraisement, and redetermination of inheritance tax due from the Estate of Robert E. Nichols, Sr. (the Estate).

### ISSUE

Whether the Probate Court erred in finding that a transfer of Florida real estate, held in trust, was a transfer of an interest in real property and therefore not subject to Indiana inheritance tax under IND. CODE 6–4.1–2–2.

### FACTS AND PROCEDURAL HISTORY

On May 20, 1991, Robert E. Nichols, Sr. (the Settlor) executed the Robert E. Nichols, Sr. Trust (the Trust). Among the assets included in the Trust's corpus was a residence that the Settlor owned in Cape Coral, Florida. In the Trust Agreement, the Settlor named himself as trustee and retained all incidents of legal and equitable title for his lifetime, including the right to alter, amend or revoke the Trust. The Settlor named his son, Robert E. Nichols, Jr. (Nichols), as successor trustee.

The Settlor died testate on June 26, 1993, at the age of seventy-six. At the time of his death, the Settlor was a domiciled resident of Johnson County, Indiana. The Settlor's will provided that all of his remaining assets would be "poured over" into the Trust.

The Trust Agreement provided that upon the Settlor's death, Nichols would be the beneficiary of all the Trust estate's tangible personal property. The Trust Agreement also provided that the Settlor's daughter and her two children would each be the recipient of a specific monetary gift, and that the remainder of the Trust's estate would be held in trust for the Settlor's wife, Janet Nichols (the Wife). Accordingly, the Trust created the "Janet Nichols Trust,"which provided in relevant part:

> The Settler's [sic.] wife shall have full use of the property owned by the Settlor located at 5608 South West 11th Place, Cape Coral, Florida for and during the remainder of her life or until her remarriage. The Trustee is specifically directed to pay the real estate taxes, insurance and upkeep on said house during the term that the Settlor's wife uses the same. The Settlor's wife is also given full right to use any and all furniture, fixtures and applicances [sic] located in said home in Florida for and during the term of her natural life or until her remarriage.

*Trust Agreement* at 5 (entered as *Exhibit 2* at the hearing and incorporated into the *Record of Proceedings* at 341). Upon the death or remarriage of the Wife, the balance of the "Janet Nichols Trust" is to be distributed to Nichols. *Trust Agreement* at 6.

On June 23, 1994, Nichols filed the Estate's Indiana Inheritance Tax Return with the Probate Court. On June 28, 1994, the Probate Court entered its Order Determining Inheritance Tax Due in the amount of $80,980.00. The Department petitioned the

Probate Court for a rehearing on October 25, 1994, alleging that, because the Estate failed to report the transfer of the Florida property held in trust as taxable, the Estate owed an additional $26,404.50 in inheritance tax. As a result, the Department claims that the Probate Court's Order Determining Inheritance Tax Due should have been in the amount of $107,384.50.

On January 12, 1995, the Probate Court held a hearing on the Department's petition. During the hearing, the Estate moved for an involuntary dismissal under Ind.Trial Rule 41(B). As the sole basis for its motion, the Estate argued that because the Department had not presented any evidence at the hearing, it therefore had not met its burden of proving its petition. The Probate Court took the matter under advisement.

On February 13, 1995, the Probate Court issued the following order:

> On the [sic] January 12, 1995 the Court heard oral argument and evidence pursuant to Petitioner, Indiana Department of State Revenue, Inheritance Division's Petition For Rehearing, Reappraisement And Redetermination Of Inheritance And Transfer Tax filed October 25, 1994. Personal Representative appeared in person and by counsel, James F.T. Sargent. Petitioner, Indiana Department of State Revenue Inheritance Division, appeared by counsel, Kathryn Symmes Kirk.
>
> The Court, having taken this matter under advisement and having considered the arguments of counsel and the Personal Representative's Memorandum Regarding Procedure At Hearing on Redetermination of Inheritance Tax filed January 13, 1995 and Petitioner's Post Hearing Brief filed January 31, 1995, now finds that said Petition should be denied.

THEREFORE, IT IS ORDERED BY THE COURT that Petitioner, Indiana Department of State Revenue, Inheritance Tax Division's Petition For Rehearing, Reappraisement And Redetermination of Inheritance And Transfer Tax filed October 25, 1994 is hereby denied.

*Record of Proceedings* at 95. The Department now appeals to this court. Additional facts will be supplied as necessary.[1]

### STANDARD OF REVIEW

■ "The Indiana Tax Court acts as a true appellate tribunal when it reviews a probate court's final determination concerning the amount of Indiana inheritance tax due." *Indiana Dep't of State Revenue v. Estate of Baldwin* (1995), Ind.Tax, 652 N.E.2d 124, 125; IND.CODE 6–4.1–7–7. Thus, "[o]n appeal, the court will not reweigh the evidence nor judge the credibility of witnesses, but will affirm the probate court's judgment upon any legal theory supported by evidence introduced at trial." *Id.* "More specifically, the tax court will reverse the probate court's judgment only if there is no substantial evidence of probative value to support the judgment." *Estate of Hibbs v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 636 N.E.2d 204, 206.

### DISCUSSION AND DECISION

IND.CODE 6–4.1–2–1 provides that Indiana's inheritance tax is imposed on a resident decedent's property interest transfer if the property transferred is described in both IND.CODE 6–4.1–2–2 and IND.CODE 6–4.1–2–4[2] and the transfer is not exempt under IND.CODE 6–4.1–3. Neither party to this case disputes the applicability of I.C. 6–4.1–2–4 or I.C. 6–4.1–3. The parties do, however, dispute whether the property transfer

---

**1.** The Probate Court's order does not specify whether it denied the Department's petition on the basis of T.R. 41(B) or on the actual merits of the case. Accordingly, in its brief to this court, the Department argued that if the Probate Court denied its petition under T.R. 41(B), the Probate Court erred. The court agrees.

As stated earlier, the entire basis for the Estate's motion to dismiss under this rule is that the Department did not present any evidence at the hearing. A review of the record, however, indicates that counsel for the Department did submit the Trust Agreement as *Exhibit 2* during the hearing. *Record of Proceedings* at 338–342. As a result, this Court will construe the Probate Court's February 13, 1995, order as a denial based on the merits of the case.

**2.** I.C. 6–4.1–2–4 provides that Indiana's inheritance tax applies to "those transfers which are made by a trust deed ..."

at issue is one to which I.C. 6–4.1–2–2 applies.

I.C. 6–4.1–2–2 reads:

The inheritance tax applies to a property interest transfer made by a resident decedent if the interest transferred is in:

(1) real property located in this state;

(2) tangible personal property which does not have an actual situs outside this state; or

(3) intangible personal property regardless of where it is located.

(Prior to amendment by P.L. 78–1993, § 1).[3] In the case at bar, the Department contends that the Settlor's transfer of the Cape Coral, Florida property, held in trust, is a taxable transfer of a beneficial interest in intangible personal property under I.C. 6–4.1–2–2(a)(3). More specifically, the Department argues that while the nature of the interest in the Florida property is real property, the fact that the property is held in trust alters the interest's character to that of taxable intangible personal property. *Appellant's Brief* at 11.

The Estate, on the other hand, asserts that the nature of the interest in the Florida property is that of real property. Indeed, the Estate explains that because the trustee must distribute the Cape Coral property to the Wife in the form of a life estate, the trustee has no power to sell or exchange the property until her life estate divests, which is upon her death or remarriage. At that point, however, the trustee must then directly convey the Florida property to Nichols as remainderman. Accordingly, the Estate continues, because the character of the interest in the Florida property is that of real property, it is not taxable under I.C. 6–4.1–2–2, as it is located outside the state of Indiana.

■ The issue for the Court to decide is whether the interest in this particular Florida property, which is held in trust, is an interest in real property or an interest in

intangible personal property. To decide that issue, the Court looks to the Indiana Trust Code, which defines the nature of a beneficiary's interest in property held in trust:

(a) The beneficiary takes an equitable interest in the trust property.

(b) The extent of the beneficiary's estate shall be determined from the terms of the trust. The Rule in Shelley's Case and the Doctrine of Worthier Title shall not be applied to determine the meaning or application of these terms.

(c) Except as provided in 30–4–2–14, *if, under the terms of the trust, the trustee is required at some time to distribute real property from the trust estate to a beneficiary, that beneficiary's equitable interest is real property. In all other cases the beneficiary's interest is personal property.*

IND.CODE 30–4–2–7 (emphasis added). This Court has previously held that "a trust interest has the character of real property under I.C. 30–4–2–7(c) *only if the terms of the trust contain an absolute requirement that the trustee distribute real property at some time to a beneficiary.*" *Indiana Dep't of State Revenue v. Estate of Puschel* (1991), Ind.Tax, 582 N.E.2d 923, 927 (emphasis added).

■ To determine whether a trust document absolutely requires that the trustee distribute real property at some time to a beneficiary, the Court examines three factors: 1) whether the trust document expressly requires the trustee to make distributions in kind; 2) whether the discretion given to the trustee in administering the trust's corpus is limited; and 3) whether the trust's beneficiaries have the power to require the trustee to make a distribution in kind. *Id.* (citing *Blood v. Poindexter* (1989), Ind.Tax, 534 N.E.2d 768, 771). These factors aid the Court in determining "whether the [Settlor] tied the trustee's hands in an attempt to preserve the trust property as real property,

---

**3.** The following paragraph was added to the statute in 1993:

(b) The inheritance tax does not apply to a property interest transfer made by a resident decedent if the interest transferred is in:

(1) real property located outside this state, regardless of whether the property is held in

a trust or whether the trustee is required to distribute the property in-kind ...

This provision does not apply, however, to individuals who have died before July 1, 1993. I.C. 6–4.1–2–2 (as amended by P.L. 78–1993, § 4).

indicating the real estate itself is the benefit the [Settlor] intended." *Id.*

### 1. Distributions In Kind

■ In the case at bar, the Settlor's Trust Agreement is organized into various sections titled "Articles." Article V of the Trust Agreement disposes of the Settlor's trust estate. In relevant part, it provides:

> After the death of the Settlor and the payment of debts, expenses and taxes . . . the Trustee shall dispose of all remaining principal and income of the trust estate in the following manner:
>
> \* \* \* \* \* \*
>
> *Section C. Residuary Trust Estate.*
>
> 1. If the Settlor's wife, Janet Nichols, survives him, the Trustee shall distribute and the Settlor hereby gives all the rest, residue and remainder of the trust estate remaining after the performance of the foregoing provisions in this Trust (the "residuary trust estate") in further trust to the Trustee, to be held, administered and distributed pursuant to the provisions of Articles [sic]VI.

*Trust Agreement* at 4–5.

Thus, in disposing of the Trust's estate, the Trust creates a second trust, the "Janet Nichols Trust." This "trust within a trust" is set forth in Article VI and provides:

> *Section B. Gift to Wife.*
>
> 1. If the Settlor's wife survives him, the Trustee shall distribute to Janet Nichols the sum of Twenty–Five Thousand Dollars ($25,000.00) per year, payable in equal monthly installments so long as the Settlor's wife remains unmarried. In the event of the remarriage of the Settlor's wife, or upon the death of the Settlor's wife, said monthly payments shall immediately cease.
>
> 2. The Settler's [sic] wife shall have full use of the property owned by the Settlor located at 5608 South West 11th Place, Cape Coral, Florida for and during the remainder of her life or until her remarriage. . . .
>
> *Section C. Disposition of Income and Principal During Lifetime of Wife.* From and after the death of the Settlor and during the Settlor's wife's lifetime, or until her remarriage, the Trustee shall pay to or apply for the benefit of the Settlor's son, Robert E. Nichols, Jr. all the net income of the Wife's Trust, in monthly or other installments not less often than annually as he and the Trustee shall determine to be most convenient. In addition, the Trustee may distribute to the Settlor's son such portion or all of the principal of the Wife's Trust as the Trustee determines to be necessary or convenient for the reasonable health, education, support or maintenance of the Settlor's son. In addition, the Trustee shall distribute to the Settlor's son such portion or all of the principal of the Wife's Trust as the Settlor's son may request in writing from time to time. The Settlor's son shall have the power to require the Trustee to convert any unproductive property of the Wife's Trust, so as to make it income-producing. . . .
>
> *Section D. Disposition upon Death of Settlor's Wife.* Effective as of the death of the Settlor's wife or remarriage of the Settlor's wife, the Trustee shall distribute any undistributed net income and principal of the Wife's Trust to the Settlor's son, Robert E. Nichols, Jr. In the event Robert E. Nichols, Jr. is not living at this time, the Trustee shall distribute any undistributed net income and principal to his children per stirpes.
>
> *Section E. Construction to Obtain Marital Deduction.* The Settlor intends that the property included in the Wife's Trust shall be deductible from her estate for federal estate tax purposes as property passing to a surviving spouse. Accordingly, notwithstanding [sic] any other provision of this Trust, the Settlor's spouse shall have such rights to receive the income from, and such power of appointment over, the property included in the Wife's Trust as well [sic] entitle the Settlor's estate to a marital deduction for such property, and the Settlor's spouse may require that any unproductive property in the Wife's Trust shall be made productive or converted by the Trustee within a reasonable time. All powers granted to the Executor and to the Trustee with respect to the property and

income of this trust shall be limited by the foregoing and shall not authorize or be construed to authorize any action which would disqualify this trust for a marital deduction.

*Trust Agreement* at 5–6.

Neither the terms of the Trust nor the terms of the "Janet Nichols Trust" require the trustee to make any distributions in kind of real property. Indeed, both are silent as to whether distribution of the Cape Coral property must be in kind or in cash.

### 2. Discretionary Powers of the Trustee

As noted above, the provisions of the "Janet Nichols' Trust" establish that "[t]he Settlor's son shall have the power to require the Trustee to convert any unproductive property of the Wife's Trust, so as to make it income-producing." *Trust Agreement* at 6.[4] While the Estate admits that the specific grant of a life estate to the Wife in the Cape Coral property is contradicted by this general power of the trustee, it insists that "logic dictates ... [the Settlor] would not have gone to the trouble of specifically providing a life estate to his wife only to see that provision nullified by the selling or converting of the property by the trustee." *Brief of Appellee* at 11. Accordingly, the Estate maintains that the basic rules of document construction require that the specific provision giving the Wife a life estate must prevail over any general powers of the trustee. The Court disagrees.

When construing a trust document, the court's first and foremost goal is to ascertain and give effect to the intent of the settlor. *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 565. To accomplish this goal, the Court must examine the trust document as a whole and not piecemeal. *Matter of Walz* (1981), Ind.App., 423 N.E.2d 729, 734. Indeed, "[t]he plain and unambiguous purpose and intention of the settlor must be determined only from the terms of the instrument itself without taking individual clauses out of context and considering same without reference to the whole

instrument." *Hauck v. Second Nat'l Bank of Richmond* (1972), 153 Ind.App. 245, 260, 286 N.E.2d 852, 861. Consequently, the intent of the settlor is determined from within the "four corners" of the trust document. *Id.*

It is clear in this case that the Settlor intended the trustee to have the power to sell or convert any property within the "Janet Nichols' Trust," including the Florida property. The language the Settlor used in his Trust Agreement communicates that intent:

> *Section ·C. Disposition of Income and Principal During Lifetime of Wife.* From and after the death of the Settlor and during the Settlor's wife's lifetime, or until her remarriage, the Trustee shall pay to or apply for the benefit of the Settlor's son, Robert E. Nichols, Jr. all the net income of the Wife's Trust, in monthly or other installments not less often than annually as he and the Trustee shall determine to be most convenient. In addition, the Trustee may distribute to the Settlor's son such portion or all of the principal of the Wife's Trust as the Trustee determines to be necessary or convenient for the reasonable health, education, support or maintenance of the Settlor's son. In addition, the Trustee shall distribute to the Settlor's son such portion or all of the principal of the Wife's Trust as the Settlor's son may request in writing from time to time. *The Settlor's son shall have the power to require the Trustee to convert any unproductive property of the Wife's Trust, so as to make it income-producing.*

*Trust Agreement* at 5–6 (emphasis added). Nevertheless, the Estate wants the Court to read the above provision as saying "[t]he Settlor's son shall have the power to require the Trustee to convert any unproductive property of the Wife's Trust, *except the Cape Coral property,* so as to make it income-producing." Those words are not in the Trust Agreement and the Court will not put them there.

Furthermore, Article IIIV [sic] of the Trust Agreement grants the trustee many

---

**4.** The Court also notes that the Trust Agreement also provides that even the Wife "may require that any unproductive property in the Wife's

Trust shall be made productive or converted by the Trustee within a reasonable time." *Trust Agreement* at 6.

discretionary powers in administering the Trust's corpus. Indeed, the trustee is given the "general power to deal with any property held in any trust as freely as he might in the handling of his own affairs." *Trust Agreement* at 7. In addition, the Trust provides that "the Settlor intends that such powers be construed in the broadest possible manner consistent with the validity of the Trust ..." *Trust Agreement* at 8.

 By way of example, Article IIIV [sic] establishes that the trustee shall have certain specific powers, including, but not limited to:

(b) *Possession and Transfer of Property.* The Trustee shall have the power to possess, sue for and from time to time sell at public or private sale, pledge or exchange, assign or transfer all or any part of the trust estate for such price and upon such terms as it may deem best in its discretion.

(c) *Retention of Property.* The Trustee shall have the right to sell and convert into cash for reinvestment the trust assets as originally received by it ...

\*　　\*　　\*　　\*　　\*　　\*

(e) *Investments in General.* The Trustee shall have the power to acquire, retain, invest and reinvest the trust assets in any property or undivided interest in property, wherever located, including ... Bonds; notes, secured or unsecured; savings accounts, insured money market accounts, certificates of deposit and other depository accounts of any financial institution including the Trustee; stock of corporations, regardless of class (including stock in the Trustee); "money market mutual funds" and similar investments; real estate or any interests in real estate ...

(n) *Distributions.* The Trustee shall have the power to make distributions in cash, or in specific property, real or personal, or an undivided interest therein, or partly in cash and partly in such property, and to do so without regard to the income tax basis of specific property allocated to any beneficiary and without making pro rata distributions of specific assets.

*Trust Agreement* at 8–9. Accordingly, the Trust gives to the trustee broad discretionary powers to deal with and administer the Trust's corpus. Because these broad powers apply to "*any* property held in *any* trust," they are applicable not only to the Trust, but to the "Janet Nichols' Trust" as well. These broad powers, *including the explicit power to make distributions either in cash or in kind,* are clear evidence that the Settlor did not intend that transfers in kind be mandatory.[5]

### 3. Rights of the Beneficiaries

Finally, the terms of the Trust do not authorize the beneficiaries to demand of the trustee a distribution in kind. As a result, the trustee's discretion to distribute the Florida property in cash or in kind is unrestricted by the beneficiaries' wishes.

### CONCLUSION

In light of the three factors set forth in the *Blood* and *Puschel* cases, the Trust document clearly indicates that the Settlor did not intend to transfer the actual Florida property itself. Instead, the Trust document indicates that it was the Settlor's intent to transfer an interest incorporeal in nature. Consequently, the Court holds that the interest of the beneficiaries is in intangible personal property under I.C. 6–4.1–2–2(a)(3) and is therefore taxable. Accordingly, the judgment of the Probate Court is reversed. The Court now

---

5. During the January 12, 1995, hearing before the Probate Court, the Estate called Nichols as a witness to testify that his father intended to transfer the Florida property in kind. The Department objected on the basis that the intent was to be surmised from the Trust Agreement alone. The Probate Court overruled the Department's objection.

Indiana's parol evidence rule provides that extrinsic evidence is inadmissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are clear and unambigu-

ous. *Hauck,* 153 Ind.App. at 260–61, 286 N.E.2d at 861. In other words, "[u]nless the court can say from a consideration of the entire instrument that a given clause is ambiguous, extrinsic evidence is inadmissible *even to explain* the instrument's meaning." *Id.* (emphasis in original). It is clear from the Trust Agreement itself that the Settlor did not intend a mandatory transfer of the Florida property in kind. Consequently, the Probate Court erred in allowing the testimony of Nichols.

REMANDS the case to the Probate Court for calculation of the proper amount of inheritance tax and interest due from the Estate, consistent with this opinion.