DECISION
This matter is before the Court on the motion seeking partial summary judgment by the defendants, Hilary Gordon Buxbaum, Joel Gordon, Leah Gordon, and Michael A. Gordon in response to a complaint brought by the plaintiff, Karen A. Gordon, pertaining to the maintenance and distribution of assets in an irrevocable trust settled by her late husband in 1985. The defendants also move for summary judgment on two counts of their counterclaim. The facts insofar as pertinent follow.
 Facts/Travel
On September 12, 1985, Jeffrey S. Gordon and his then wife, Patricia E. Gordon, established the "Jeffrey S. Gordon Irrevocable Insurance Trust," (hereinafter "the Trust"). At the time the Trust was created, Jeffrey and Patricia had three children together, namely, Hilary, Joel, and Leah, (hereinafter collectively, "the children"). Patricia Gordon died in January of 1989. Jeffrey married Karen A. [Harris] Gordon on November 19, 1989. Jeffrey died from cancer on November 23, 1997. At Jeffrey's death, the Trust was funded with approximately $1.8 million in life insurance proceeds.
 The Complaint
In her three count complaint filed with this Court on October 29, 1998, Karen Gordon requested: (1) A preliminary injunction requiring Michael Gordon as trustee, to distribute a monthly income to her of $13,000.00, while prohibiting him from making distributions to the children or from diversifying the Trust portfolio; (2) the removal of Michael as trustee and the appointment of a successor independent trustee; and (3) declaratory relief demanding that the Court determine: (i) Karen Gordon to be primary beneficiary of the Trust, entitled to all net income, (ii) the children to be secondary beneficiaries, (iii) the amounts of principal and income necessary to maintain Karen's lifestyle, (iv) that Trust investments should be utilized in order to maximize immediate income, and (v) that Karen should be declared co-trustee of the Trust.
On January 20, 1999, this Court denied the first Count of petitioner's complaint for a preliminary injunction against Michael Gordon, which would have (i) barred him from making distributions to the children and (ii) required him to provide Karen Gordon with a monthly income of $13,000.00 from the Trust. In denying Karen Gordon's petition, the Court determined that it was premature to "find that this independent trustee [Michael Gordon], who only has been in office for a short period of time at the time of the hearing on this matter, has breached the discretionary powers given to him by failing to act in a fiduciary manner." In Re: Jeffrey S. Gordon Trust. C.A. 98-5311, January 20, 1999, Silverstein, J.
 The Counterclaim
On March 11, 1999, the Court granted motions brought by the children and Michael Gordon to amend their answers to plaintiffs complaint and to assert counterclaims. The three count counterclaim brought by the children and Michael Gordon seeks: (1) a declaration that plaintiff is not a beneficiary of the Trust pursuant to the terms of the Antenuptial Agreement executed between Karen Gordon and Jeffrey Gordon; (2) an order directing plaintiff to return the children's personal property located at the home shared by Karen Gordon and decedent; and (3) a declaration that plaintiff is not a co-trustee of the Trust or, in the alternative, an order removing plaintiff as the purported co-trustee of the Trust due to breaches of her fiduciary duty.
Michael Gordon and the children seek summary judgment on Counts II and III of Karen Gordon's petition, pertaining to the removal of Michael Gordon as trustee and the declaratory judgment sought that would hold Karen Gordon as the primary beneficiary of the Trust, thereby entitled to all net income to support the lifestyle to which she has been accustomed. Michael Gordon and the children also seek summary judgment on Counts I and II of their counterclaim, which states that Karen Gordon is not a beneficiary under the Trust and that the children are entitled to the return of their personal property located at their former dwelling.[1]
 Terms of the Trust
The Trust provides for the appointment of a trustee as follows:
 "If during my lifetime, my wife ceases to serve as trustee, I appoint my cousin Arthur Sheer as her successor; and upon my death, if my said cousin is not then serving I appoint my said cousin as co-trustee to serve together with my wife. If, at any time, Arthur Sheer fails or ceases to serve, I appoint my brother Michael Gordon trustee in his place . . . After my death there shall always be an independent trustee." (Trust Article Seventh).
Upon the death of Jeffrey's first wife, Patricia, his cousin, Arthur Sheer succeeded her as trustee pursuant to the express terms of the Trust. After Patricia's death and during the lifetime of Jeffrey, Arthur Sheer served as the sole trustee of the Trust.
The Trust further instructs on the appointment of a trustee as follows:
 "Any appointment of a trustee shall be effective upon such trustee's acceptance. Any such acceptance, resignation, or delegation under this Clause shall be made by a duly acknowledged instrument and shall be effective without necessity of judicial action. A resignation shall be effective only upon the acceptance of a successor trustee, if any, and shall not require a court accounting." (Trust Article Seventh, § 9).
During Jeffrey's lifetime, Karen never accepted a position as co-trustee of the Trust. On or about June 30, 1998, Arthur Sheer resigned as trustee due to potential conflicts in his fiduciary duties as trustee and with his duties as a general partner in a company which Jeffrey had a financial interest. Pursuant to the express terms of the Trust, Michael Gordon succeeded Arthur Sheer as trustee and executed a duly acknowledged instrument to that effect.
The Trust further instructs that: "Only my cousin, Arthur Sheer of Stamford, Connecticut, my brother, Michael Gordon, or a person or a corporation having no vested or contingent beneficial interest hereunder shall serve as independent trustee." (Trust Article Fifth, § 3). The Trust also directs that "All powers conferred on my trustees herein shall be exercisable only in a fiduciary capacity." (Trust Article Eighth).
The Trust provides for the trustee to distribute income and principal after the settlor's death as follows:
 1. Income. "[M]y trustees shall at any time or times pay all or any portion of the net income of the trust estate to my wife and shall pay all or any portion of the net income not paid to my wife to any one or more of my children and other issue as my independent trustee shall deem advisable for the care, maintenance, support, education or welfare of any of them. Payments may be unequal and one or more beneficiaries may be excluded from such payments. Net income not so paid shall be added to principal."
 2. Principal. "[M]y trustees shall at any time or times pay all or any portion of the principal of the trust estate to such one or more of my wife and my children and other issue as my independent trustee shall deem advisable for the care, maintenance, support, education or welfare of any of them. Payments may be unequal and one or more beneficiaries may be excluded from such payments." (Trust Article Fourth).
According to the submitted affidavits, depositions, and financial statements, the Trust earned gross income of approximately $75,000.00 in 1998. (See Exhibit D, Sheer Asset Management, Income and Expenses statement, from December 31, 1997 through December 31, 1998). Although plaintiff Karen Gordon claims the annual income may reach $130,000.00, thereby nearly satisfying her claim for $13,000.00 per month, this figure is based upon an estimated projection and not the actual earnings of the portfolio. (See Petitioner's Memoranda, 13 §§ 34, 35; Petitioner's Exhibit 10).
Between January 1998 and June 1998, the independent trustee (Arthur Sheer), distributed approximately $78,000.00 (or $13,000.00 per month) of the Trust's gross income to plaintiff Karen Gordon.[2] After Arthur Sheer's resignation as independent trustee in the summer of 1998, Michael Gordon requested changes in the portfolio from 100 percent bonds to approximately 60 percent in equities and 40 percent in bonds.
After Michael Gordon became acquainted with the terms and needs of the Trust, and in order to avoid "tapping the principal", he reduced the payments to Karen Gordon and distributed $8,000.00 to her in August, 1998. (See Plaintiff's Exhibit 6; February 19, 1999 Deposition of Michael Gordon, 44-45). Michael Gordon did not make another payment to Karen Gordon until November 1998, and that payment in the amount of $8,000.00, was distributed pursuant to a Court Order compelling Michael Gordon to pay the aforesaid amount.[3] Although Michael Gordon approved payments of $3,500.00 to Karen Gordon in December 1998 and January 1999, she claims not to have received either of these payments because of a stop payment order issued on the checks prior to their deposit.
Both parties agree that Michael Gordon distributed a total of $101,500.00 to Karen Gordon in 1998. However, Karen Gordon claims to be entitled to a minimum of $156,000.00 per year to satisfy her expenses of at least $13,000.00 per month. (See Karen Gordon Deposition, 286-287; Petition at 18, 22, 43).
When faced with such a conflict between a beneficiary's demand for payments and upholding the intent of the settlor, the Trust instructs as follows:
 "Whenever my independent trustee is charged with determining whether it is advisable to pay income or principal to any beneficiary such trustee shall take into account all circumstances, including possession by such beneficiary of other resources or a right to support and also including any tax consequences and the desirability of avoiding an accumulation of net income under any income tax law, but other resources or a right support shall not preclude the making of any such payment, if deemed advisable. In making such determination such trustee may rely upon any statement from or in behalf of such beneficiary and need make no independent investigation." (Trust Article Fifth, § 66).
In considering the "other resources" available to Karen Gordon, it is significant to note that an Antenuptial Agreement was executed by the couple prior to their marriage. The Antenuptial Agreement provides that Jeffrey and Karen Gordon agree to "limit their rights and obligations, one to the other, in the event of a termination of their anticipated marriage by death or divorce." (November 17, 1989, Antenuptial Agreement 1). The Antenuptial Agreement also named Karen Gordon as the sole beneficiary of a $300,000.00 life insurance policy outside of the Trust. It reads in pertinent part: "JEFFREY shall maintain at his sole expense a policy of insurance on his life which provides a death benefit outright to KAREN, if she survives JEFFREY as his widow, of not less than Three Hundred Thousand Dollars ($300,000.00)." (Antenuptial Agreement Article 6 (A)). Additionally, Karen Gordon receives approximately $66,000.00 per year from sources unrelated to the Trust.[4]
The gravamen of Karen Gordon's complaint and the rationale underlying her request for at least $13,000.00 a month from the Trust is founded upon the provision stating that the independent trustee may contemplate the standard of living enjoyed by the beneficiaries prior to the settlor's death. The provision provides in pertinent part:
 "In this connection, my independent trustee shall be guided in its determination by the standards of living which I shall have maintained for my wife and children prior to my death which standards shall, insofar as it is practical to do so, be maintained for each beneficiary of the trusts hereof entitled in the discretion of my independent trustee to distributions of income or principal and by the fact that I consider travel both in this country and abroad, to be educational as well as recreational." (Trust Article Fifth, § 6).
 Standard of Review
In a proceeding for summary judgment, the Court must "examine the pleadings and affidavits in the light most favorable to the nonmoving party to decide whether an issue of material fact exist[s] and whether the moving party [is] entitled to summary judgment as a matter of law." Buonnanno v. Colmar Belting Co.,Inc., 733 A.2d 712, 715 (R.I. 1999) (citing Textron, Inc. V.Aetna Casualty and Surety Co., 638 A.2d 537, 539 (R.I. 1994)). The party opposing a motion for summary judgment may not merely rely upon mere allegations or denials in his or her pleadings.Small Business Loan Fund v. Loft 734 A.2d 953, 955 (R.I. 1998) (citing Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998)). Rather, the opposing party must "assert facts that `raise a genuine issue to be resolved.'" Buonnanno, 733 A.2d at 715 (quoting Textron 638 A.2d at 539).
 Discretionary Trust versus Support Trust
Plaintiff Karen Gordon essentially requests that this Court declare the Trust a "support trust" intended to maintain the standard of living she was accustomed to prior to the death of Jeffrey Gordon. A trust is considered a "support trust" if the beneficiary can compel the trustee to make a payment of trust funds merely by demonstrating that the money is necessary for his or her maintenance, education, or welfare. Chenot v. Bordeleau.561 A.2d 891, 893 (RI. 1989). The trust assets of a support trust are considered to be resources of the beneficiary. Id.
A discretionary trust permits the trustee to exercise complete and uncontrolled discretion to make distributions of trust funds if and when deemed appropriate. Chenot at 894 (citing FirstNational Bank of Maryland 284 Md. at 725, 399 A.2d at 894). When the Court determines that a trust is discretionary, the trust assets are not the property of its beneficiaries. Id. at 893 (citing Application of Yan Manor Nursing Home. Inc. 96 Misc.2d 463, 409 N.Y.S.2d 201 (1978)); see also United States v.O'Shaughnessy 517 N.W.2d 574 (Minn. 1994) (where the Court determined that the beneficiary of a discretionary trust has a "mere expectancy" in undistributed income or principal).
The Trust in the instant litigation provides in part that the independent trustee "shall at any time . . . pay all or any portion of the net income . . . to [Karen Gordon] and shall pay all or any portion of the net income not paid to [her] to any one or more of [the children] and other issue as my independenttrustee shall deem advisable for the care, maintenance, support, education or welfare of any of them." The Trust further directs that "[p]ayments may be unequal and one or more beneficiaries maybe excluded from such payments." Id. (Emphasis added).
As expressly stated in the terms of the Trust, the trustee may distribute payments in unequal amounts to the beneficiaries, or distribute no payments whatsoever. The trustee of a true discretionary trust may elect not to use the income or principal for the beneficiary. See e.g. Doll v. Department of HumanServices C.A. 89-3 153, April 28, 1992, Gibney, J.; See also
Restatement (Second) Trusts § 155 (1) (1959) (If considered a true discretionary trust, a "creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal"). Further, even though the subject Trust includes support terminology to distribute funds to any of the beneficiaries for the "care, maintenance, support, education or welfare," Courts have considered such language to warrant "merely distribution guidelines for the trustees, rather than restrictive conditions imposing any duty" on the trustee. Auchincloss v. City BankFarmers Trust Co., 136 Conn. 266, 269, 70 A.2d 105, 106 (1948);see also Hacker v. Stark County Social Service Board.527 N.W.2d 226 (ND 1994) ("Even though a trust may include support terminology . . . if the language of the trust grants sole discretion to the trustee to make or withhold distributions, then the trust is considered to be a discretionary trust rather than a support trust"). Thus, because the terms of this Trust grant discretion to the independent trustee to make or to withhold distributions, the Trust is considered to be a discretionary trust rather than a support trust. See Id.
 Request to Remove Michael Gordon as Trustee
The discretionary trust grants complete and uncontrolled discretion to the trustee to distribute trust assets as he or she deems appropriate. See Chenot 561 A.2d at 894. Clearly, the language of the Trust evidences Jeffrey Gordon's intention to grant his independent trustee with discretion to this effect. Because of such liberal authority conveyed to the trustee in a discretionary trust, "the beneficiary can only compel the trustee to distribute funds if it can be shown that the trustee is abusing its discretion by acting arbitrarily, dishonestly, or improperly in regard to motive in denying the beneficiary the funds sought." Id. (citing Matter of Roberts, 61 N.Y.2d 782, 473 N YS. 2d 163, 461 N.E.2d 300 (1984)); see also Barnard v. UnitedStates Bank 8 Or. App. 608, 495 P.2d 766 (1972); Town of Randolphv. Roberts 346 Mass. 578, 579, 195 N.E.2d 72, (1964)). Karen Gordon has failed to proffer any evidence that raises a genuine issue to be resolved with respect to Michael Gordon's exercise of discretion, or with respect to any other fact that may have showed an abuse of such discretion, or that he acted arbitrarily, dishonestly, or improperly at this juncture in his tenure as trustee. Karen Gordon claims that Michael Gordon's failure to continue compensating her in the amount of $13,000.00 per month essentially amounted to an abuse of his trustee discretion.
The Court finds this allegation to be meritless for the simple reason that Michael Gordon did not exceed the boundaries set forth by the express terms of the Trust, which specifically permit the independent trustee to pay unequal amounts of trust assets to beneficiaries, or to withhold such payment to beneficiaries altogether. When a Court is requested to review a trustee's action, the language of the trust instrument itself will be an important factor. See Restatement (Second) of Trusts
§ 187, commented (1959).
Karen Gordon further claims that Michael Gordon's intentions to convert Trust assets from interest producing bonds to equities violates his fiduciary duty to her as a beneficiary because it does not consider the intentions of the Trust instrument. This claim is also devoid of the requisite evidence to prove an abuse of discretion by Michael Gordon. In fact, Michael Gordon acted prudently when he sought advisement from financial investment strategists who informed him that this diversification would best provide for the beneficiaries over the long-term life of the Trust.[5]
 Request for Declaratory Relief
Plaintiff Karen Gordon requests that this Court declare her to be (1) the primary beneficiary of Trust income while the children would be secondary beneficiaries; (2) entitled to net income to sustain her standard of living enjoyed while Jeffrey was alive; (3) an equal beneficiary with the children with respect to principal and; (4) co-trustee of the Trust.
Karen Gordon's request to be declared primary beneficiary as to income would essentially necessitate this Court to segregate her from the classification of all other Trust beneficiaries and would place her in the forefront of all beneficiary distribution. To do so would be contrary to the express terms of the Trust, which vest the independent trustee with discretion in the distribution of both income and principal. (See Trust Article Fourth, 6 6 1, 2). Further, the Trust does not distinguish between classes of beneficiaries or favor one over the other. In fact, the Trust expressly provides that: "Payments [of income and principal] may be unequal and one or more beneficiaries may be excluded from such payments." Where a trust is created for more than a single beneficiary, it is the duty of the trustee to deal impartially among the several classes of beneficiaries. A. Scott W. Fratcher, The Law of Trusts § 183 (4th ed. 1987). Therefore, the Court will not create or impose such a distinction among the beneficiaries when the Trust itself fails to make such a distinction.
Karen Gordon mistakenly places sole reliance on the provision that the trustee shall uphold the beneficiaries' standard of living prior to Jeffrey Gordon's death without incorporating the other provisions that guide the trustee in the distribution of principal and income. Although the Trust does provide that the trustee shall consider the beneficiaries' living standards as far as it is practical to do so and within the trustee's discretion, the paragraph prior to this provision instructs the trustee to "take into account all circumstances, including possession by such beneficiary of other resources. . . ." (Trust Article Fifth, § 6).
The trustee's duty, or right to consider a beneficiary's other resources depends on the intent of the settlor or testator. G. Bogert G. Bogart, The Law of Trusts and Trustees §§ 811, 812 (2nd ed. Rev. 1981); Scott Fratcher, supra § 128.4. This intent is gleaned from the trust instrument as a whole and the circumstances surrounding the testator at the time the trust instrument was executed. Bogart, supra Scott, supra.
Those circumstances include the testator' s relationships with the beneficiaries in question, as well as with his remainderman.Id. The settlor's knowledge of the various beneficiaries' financial situations is' also an important factor. Bogart, supra
§ 811; Nations Bank of Virginia v. Estate of Grandy. 450 5 .E.2d 140 (VA 1994). (Court upheld the trustee's decision to limit invasion of the trust principal because the beneficiary had other personal assets available).
Clearly, Jeffrey Gordon intended that his independent trustee consider the outside resources available to the named beneficiaries in the Trust. At the time the Trust was executed, Jeffrey and Karen Gordon were not married. Although the Trust dictates that the term "my wife" refers to "the woman to whom I am married at my death," it is significant that Jeffrey and Karen duly executed an Antenuptial Agreement prior to their marriage, wherein Jeffrey made other financial arrangements for Karen Gordon in the event of his death. In addition to the considerable distributions available to Karen per the Antenuptial Agreement, she also receives annual payments of approximately $66,000.00 consisting of her salary as a travel agent and child support payments from her first husband. The financial status of Karen Gordon versus that of the children are circumstances that the trustee may consider in-making distributions. Jeffrey Gordon granted the trustee discretion to consider the financial stations of the beneficiaries during the life of the Trust. Clearly, Leah Gordon, as a college student, living away from home and without resources of her own, requires substantial distributions of Trust assets. Michael Gordon may use his knowledge of the financial status of each beneficiary in distributing Trust assets. Bogart,supra § 811. The standard of living provision acts merely as a guide for the trustee, to be exercised in his discretion, in his disbursement of Trust assets.
Finally, Karen Gordon requests that this Court declare her to be co-trustee of the Trust pursuant to the express terms of the Trust which provide: "I appoint my said cousin as co-trustee to serve together with my wife." (Trust, Article Seventh). However, once again Karen Gordon fails to incorporate other Trust provisions in her interpretation of the whole and construes the aforementioned provision in a vacuum. "When construing a trust document, the court's first and foremost goal is to ascertain and give effect to the intent of the settlor." Indiana Dept. of StateRevenue, Inheritance Tax Div. v. Estate of Nichols659 N.E.2d 694, 699 (Ind.Tax, 1995). "To accomplish this goal, the Court must examine the trust document as a whole and not piecemeal." Id.
In construing the Trust instrument as a whole, the Court notes the following provision: "Whenever my independent trustee shall be serving as sole trustee it shall be permissible butunnecessary to appoint a co-trustee." (Trust, Article Seventh) (Emphasis added). In addition to this express Trust provision, the Court will not declare Karen Gordon to be co-trustee because of the friction between herself and the other beneficiaries (the children). When friction between the trustee and beneficiary may affect future cooperation or if the trustee's acts would be detrimental to the interest of the beneficiary, the trustee may be removed. See Petition of Statter 275 A.2d 272, 276,108 R.I. 326, 335 (R.I. 1971) (citing In re Estate of Gilmaker,57 Cal.2d 627, 21 Cal.Rptr. 585, 371 P.2d 321; 1 Restatement (Second)Trusts § 107 comments a and c; Scott, supra § 107; see also 63 A.L.R.2d 523). "In deciding such cases the court's paramount duty is to see that the trust is properly executed and that the beneficiaries are protected" Id.; Bogert, supra § 527 at 378-79. Although Karen Gordon was never officially appointed co-trustee, the Court finds that it would be contrary to the interests of the beneficiaries to make such an appointment at this time.
 Counterclaim
Michael Gordon and the children request that this Court award them summary judgment on Counts I and II of their counterclaim, which states that Karen Gordon is not a beneficiary under the Trust and that the children are entitled to the return of their personal property located at their former dwelling.
The children and Michael Gordon essentially aver that Karen Gordon relinquished her right as a beneficiary of the Trust under the terms of the Antenuptial Agreement. They claim that she "waived, released and barred herself from asserting any and all claims, of any kind, nature and description that she may acquire as Jeffrey Gordon's surviving spouse." (Antenuptial Agreement Article 3 at 3).
In order to ascertain Karen Gordon's rights as a beneficiary, it is necessary to ascertain the intent of the settlor. The plain and unambiguous purpose and intention of the settlor is determined from within the "four corners" of the trust document.Estate of Nichols 659 N.E.2d at 699. The Trust document defines wife as the "woman to whom I am married at my death"; as such, Karen Gordon qualifies as a beneficiary under the Trust. However, her share of Trust assets will be distributed according to the discretion of the independent trustee, who shall be heedful of all "other resources" available to Karen including the provisions enacted for her in the Antenuptial Agreement. Therefore, defendants' claim for summary judgment on Count I of their counterclaim is denied.
Count II of defendants' counterclaim requests that this Court grant permission to the children to recover their property from their former home during the life of their father. Before granting such permission, the children are directed to submit an inventory of the items to be removed along with the proper affidavits within fourteen (14) days following the issuance of this decision.
 Conclusion
Summary judgment will be granted when there is no genuine issue of material fact and a moving party is entitled to judgment as a matter of law. The Court has considered the arguments of counsel and has carefully examined and reviewed the memoranda submitted by the parties. After due consideration, the Court finds there to be no genuine issue of material fact in respect to Counts II, and III of plaintiff Karen Gordon's complaint. Therefore, the defendants — Michael Gordon, Hilary Gordon Buxbaum, Joel Gordon, and Leah Gordon are entitled to partial summary judgment with respect to Count II and Count III of plaintiff, Karen Gordon's complaint as demanded. The Court does find issues of material fact with respect to Count I of defendants' counterclaim, and as such their motion for summary judgment on Count I is denied. The Court reserves judgment on Count II of their counterclaim, pending the parties' submission of supplemental memoranda.
Counsel shall submit an appropriate order and judgment for entry.
[1] Michael Gordon notes in his memoranda that he reserves the right to file a separate motion related to Count III of his counterclaim, if the Court finds that Karen Gordon should indeed serve as co-trustee.
[2] The children note in their memorandum that "As of July 1998, an amount equal to the entire year's net income had already been distributed to petitioner."
[3] Michael Gordon distributed the $8,000.00 and submitted a ledger of distributions with an affidavit designating $2,000.00 per month for the months of September, October, November, and December of 1998.
[4] Some of these sources include an annual salary as a travel agent, monthly child support payments from her children's father, and social security payments on behalf of her children. (Karen Gorden Deposition, 140-141).
[5] Once again, the Court duly notes that it is early in the management of the Trust; and although Michael Gordon has not abused his trustee discretion since assuming his trustee duties, petitioner's rights in the future will not be prejudiced.