INDIANA DEPARTMENT OF STATE
REVENUE, INHERITANCE TAX
DIVISION, Appellant,

v.

In re ESTATE OF Katherine
S. BOEHLE, Deceased,
Appellee.

No. 49T10–0811–TA–62.

Tax Court of Indiana.

July 22, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Kristen M. Kemp, Deputy Attor-ney General, Indianapolis, IN, Attorneys for Appellant.

William W. Barrett, Daniel J. Paul, Williams Barrett & Wilkowski, LLP, Greenwood, IN, Attorneys for Appellee.

FISHER, J.

The Indiana Department of State Revenue, Inheritance Tax Division (Department) appeals the Marion Superior Court Probate Division's (probate court) denial of its motion to correct error. The issue for review, as restated by the Court, is whether the probate court erred in determining the Estate's inheritance tax liability.

### FACTS AND PROCEDURAL HISTORY

On November 15, 2006, Katherine S. Boehle (Katherine) died testate; she was survived by her son, Dale V. Boehle (Dale), and her nephew, Mark Oakley (Mark). At the time of his mother's death, Dale, a 56 year-old adult with Down Syndrome, was residing in an assisted living facility. (*See* Appellant's App., Ex. C at 25; Ex. D at 2; Ex. J ¶ 7.) Article II of Katherine's will established a testamentary trust (Trust), which in relevant part provided:

In the event that Settlor's son, **DALE VERNON BOEHLE**, . . . survives the Settlor, the Trustee shall hold the Trust property in a Special Supplemental Care Trust for the benefit of Dale [; the] Trust shall be administered under the following terms and provisions:

1. It is Settlor's intention by this Trust to create a purely discretionary supplemental care fund for the benefit of [Dale]. It is not Settlor's intention to displace public or private financial assistance that may otherwise be available to [Dale].

\* \* \* \* \* \*

2. The Settlor does not want this Trust eroded for [Dale's] creditors, nor does the Settlor want [Dale's] public or private assistance benefits made unavailable to him, or terminated. This Trust is not for [Dale's] primary support. It is to supplement his supplemental care needs only. [Dale] has no entitlement to the income or corpus of this Trust, except as the Trustee, in its complete, sole, absolute, and unfettered discretion, decides to disburse. In this regard, the Trustee may act unreasonably and arbitrarily as the Settlor could if the Settlor were living and in control of these funds. The Trustee's discretion in making non-support disbursements as provided for in this instrument is final as to all interested parties, including the state or any governmental agency or agencies, even if the Trustee elects to make no disbursements at all. The Trustee's sole and independent judgment, rather than any other parties' determination, is intended to be the criterion by which disbursements are made. No court or any other person should substitute its or their judgment for the discretionary decision or decisions made by the Trustee.

\* \* \* \* \* \*

4. The Trustee shall consider all resources and income limitations that affect [Dale's] right to public assistance programs. Distribution to or for the benefit of [Dale] shall be limited so that he is not disqualified from receiving public benefits to which he is otherwise entitled. [Dale's] probable and possible future supplemental care needs should be considered by Trustee in connection with disbursements made by the Trustee from this Trust. The interest of remainder beneficiaries are of only secondary importance.

\* \* \* \* \* \*

8. Following the death of [Dale], this Trust shall terminate and the Trustee shall distribute the remaining Trust principal and any accumulated income as provided in Article II.D.[1]

(Appellant's App., Ex. U at 12–15 (footnote added).) On June 22, 2007, the Estate filed its Indiana inheritance tax return valuing all beneficiaries' interests in the Trust as future interests. On August 14, 2007, the probate court accepted, as filed, the Estate's inheritance tax return; based on the return, the Estate owed $25,022.82 in inheritance tax.

On November 13, 2007, the Estate filed a "Petition to Docket Trust" (petition), requesting that the probate court determine the amount of inheritance tax due because the Department had challenged its method of calculating its inheritance tax liability. (Appellant's App., Ex. F ¶ 7.) On May 27, 2008, after conducting a hearing on the Estate's petition, the probate court issued an order stating that the Estate's inheritance tax liability was to be determined pursuant to Indiana Code § 6–4.1–6–4 [2]

---

1. Upon Dale's death, any remaining corpus was to be distributed to Mark and three charities. (*See* Appellant's App., Ex. U at 4–5, 15.)

2. Indiana Code § 6–4.1–6–4 provides that:
   For purposes of determining the inheritance tax imposed on a decedent's transfer of specific property, the [ ] probate court shall, so far as possible, determine the manner in which the property will probably be distributed if:
   (1) a contingency makes it impossible to determine each transferee's exact interest in the property; and
   (2) the [Department] and the taxpayer fail, within a reasonable time, to enter into an agreement under section 3 of this chapter.

because "[a] contingency [made] it impossible to determine each transferee's exact interest in the property; and [t]he [Department] and the [Estate] failed, within a reasonable time, to enter into an agreement under IC 6–4.1–6–3." (Appellant's App., Ex. B ¶ 2.) The probate court's order also provided that the Estate's inheritance tax calculation, which was "based upon a life estate to [Dale, was] fair (if not more than fair) to the State" because "[t]he evidence prove[d] that, at the very least, all [T]rust income will probably be distributed to or for [the benefit of] Dale [.]" (Appellant's App., Ex. B ¶ 3.) Accordingly, the probate court found that the Estate owed no additional inheritance tax.

On June 25, 2008, the Department filed a motion to correct error with the probate court. In its motion, the Department asserted that the probate court erred in determining the Estate's inheritance tax liability, as no contingency existed with respect to Dale's interest in the Trust. (*See* Appellant's App., Ex. L at 2–3.) The Department also suggested that the probate court's order was unfair in that it "create[d] an incongruous situation and the absurd result of an asset having two diametrically opposed valuations." (*See* Appellant's App., Ex. L at 4.) On August 7, 2008, the probate court denied the Department's motion without making any additional findings.

On August 14, 2008, the Department filed an appeal with this Court. The Court heard the parties' oral arguments on February 23, 2009. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The Indiana Tax Court acts as a true appellate tribunal when reviewing an appeal of a probate court's determination concerning the amount of Indiana inheritance tax due. IND.CODE ANN. § 6–4.1–7–7 (West 2010). *See also In re Estate of Young*, 851 N.E.2d 393, 395 (Ind.Tax Ct.2006). Accordingly, while the Court will afford the probate court great deference in its role as the finder of fact, it will review the probate court's legal conclusions *de novo. Id.* (footnote omitted).

## DISCUSSION

■ In Indiana, "[a]n inheritance tax is imposed at the time of a decedent's death on certain property interest transfers made by him." [3] IND.CODE ANN. § 6–4.1–2–1(a) (West 2006) (footnote added). The tax is based on the fair market value of the property interest on the date of the decedent's death or on the date used to value the property interest for federal estate tax purposes. IND.CODE ANN. § 6–4.1–5–1.5(a) (West 2006). If a beneficiary receives less than a fee interest in the property transferred by reason of the decedent's death (i.e., a life estate or a future interest), the fair market value of that interest is calculated using actuarial tables. IND.CODE ANN. § 6–4.1–6–1(a) (West 2006).[4]

IND CODE ANN. § 6–4.1–6–4 (West 2006).

3. "The tax is not imposed on the property itself, but rather on the transfer of ownership of either the legal or beneficial interest in the property.'" *In re Estate of Young*, 851 N.E.2d 393, 395 n. 4 (Ind.Tax Ct.2006) (citation omitted).

4. The statute requires the Department to:
   [] if possible, appraise each future, contingent, defeasible, or life interest in property and each annuity by using the rules, methods, standards of mortality, and actuarial tables used by the Internal Revenue Service on October 1, 1988, for federal estate tax purposes.

IND.CODE ANN § 6–4.1–6–1(a) (West 2006). The statute further instructs that "the value of a future interest in specific property equals the remainder of: [] the total value of the property; minus [] the value of all other interests in the property." *Id.* at (b).

"Thus, when a life estate with a remainder is created, both the life tenant and the remainderman will pay Indiana inheritance tax on their proportionate interests, based on the interests' values at the date of the decedent's death." *Estate of Young*, 851 N.E.2d at 396 (citation omitted).

On appeal, the Department asserts that the probate court's order must be reversed. More specifically, the Department explains that because the Trustee is not required to distribute either interest or principal to Dale, Dale had no "beneficial interest" in the Trust. (*See* Appellant's Br. at 5–6.) Therefore, claims the Department, Katherine's "precatory remarks" in the Trust (i.e., those "express[ing] a desire that the [T]rustee voluntarily give [Dale] financial assistance") failed to transfer any real interest in the Trust to Dale upon her death. (*See* Appellant's Br. at 6.) The Court, however, must disagree.

■ Indiana's Trust Code designates the beneficiary of a trust as either an "income beneficiary" or a "remainder beneficiary." *See* IND.CODE ANN. § 30–4–1–2(3) (West 2006). *See also* IND.CODE ANN. § 30–2–14–2(2) (West 2006). An "income beneficiary" is "a person to whom net income of a trust is *or may be* payable." IND.CODE ANN. § 30–2–14–5 (West 2006) (emphasis added). *See also* A.I.C. § 30–4–1–2(8). A "remainder beneficiary" "receive[s] principal when an income interest ends." Ind.Code Ann. § 30–2–14–11 (West 2006). In turn, an "income interest" means that an income beneficiary has the right "to receive all or part of net income, *whether the terms of the trust require it to be distributed or authorize it to be distrib-*

*uted in the trustee's discretion.*" [5] IND.CODE ANN. § 30–2–14–6 (West 2006) (emphasis and footnote added). These statutes indicate that there simply can be no remainder beneficiary without an income beneficiary. *See also, e.g.,* BLACK'S LAW DICTIONARY 1405 (9th ed. 2009) (defining "remainder" as "[a] future interest arising in a third person—that is, someone other than the estate's creator, its initial holder, or the heirs of either—*who is intended to take after the natural termination of the preceding estate* " (emphasis added)). These statutes also illustrate that a trustee's discretion in distributing net income has no bearing upon whether a person has an interest in a trust.

■ Here, the Trust provides that upon Katherine's death "the Trustee shall hold the Trust property in a Special Supplemental Care Trust for the benefit of Dale[.]" (Appellant's App., Ex. U. at 12.) In addition, the Trust directs the Trustee to distribute any remaining assets to Mark and the charities subsequent to Dale's death. (*See* Appellant's App., Ex. U at 4–5, 15.) Under the plain terms of the Trust, Dale is the income beneficiary; Mark and the charities are the remainder beneficiaries. *See Indiana Dep't of State Revenue, Inheritance Tax Div. v. Estate of Nichols*, 659 N.E.2d 694, 699 (Ind.Tax Ct.1995) (providing that the Court's primary goal in construing a trust document is to ascertain and give effect to the intent of the settlor by examining the trust document as a whole and not piecemeal) (citations omitted). Therefore, Dale had a legally cognizable interest in the Trust.

5. An income beneficiary's entitlement to net income commences on the date the income interest begins (i.e., "the date specified in the terms of the trust or, if no date is specified, on the date an asset becomes subject to a trust"). IND.CODE ANN. § 30–2–14–20(a) (West 2006).

"An income interest ends on the day before an income beneficiary dies or another terminating event occurs, or on the last day of a period during which there is no beneficiary to whom a Trustee may distribute income." *Id.* at (d).

Nevertheless, the Department claims that Dale's interest in the Trust was valueless because the Trust specifically stated that he had "no entitlement to the income or corpus" of the Trust. (*See* Appellant's Br. at 6–7 (*referring to* Appellant's App., Ex. U at 13).) According to the Department, that language evidences the true purpose of the Trust: Katherine "chose to create the [T]rust in an effort to not 'displace public or private financial assistance that may otherwise be available to [Dale].' " (Appellant's Br. at 7 (*quoting* Appellant's App., Ex. U at 12).) Thus, maintains the Department, assigning any value other than zero to Dale's interest is contrary to Katherine's intent, given that she clearly did not want the Trust assets to render Dale ineligible for Medicaid/Medicare benefits. (*See* Appellant's Br. at 7.) (*See also* Appellant's Reply Br. at 3; Oral Argument Tr. at 31–34.)

■ As previously mentioned, when this Court construes a trust document, its first and foremost goal is to ascertain and give effect to the intent of the settlor. *Estate of Nichols,* 659 N.E.2d at 699 (*citing Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 565 (Ind.1992)). To accomplish this goal, the Court will examine the " 'terms of the instrument itself without taking individual clauses out of context and considering same without reference to the whole instrument.' " *Id.* (*quoting Hauck v. Second Nat'l Bank of Richmond,* 153 Ind.App. 245, 286 N.E.2d 852, 861 (1972)). In other words, the settlor's intent is determined from within the "four corners" of the trust document. *Id.*

■ In this case, the Trust clearly conveys that Katherine intended to provide for the needs of her incapacitated son subsequent to her death *as fully as possible.* (*See* Appellant's App., Ex. U at 12 (providing "[i]n the event that [my] son, Dale, ... survives [me], the Trustee shall hold the Trust property in a Special Supplemental Care Trust for [his] benefit" (emphasis omitted)).) (*See also* Appellant's App., Ex. U at 14 (providing that "[t] he interest[s] of [the] remainder beneficiaries are of only secondary importance").) Indeed, in the Trust, Katherine explained that she intended to "create a purely discretionary supplemental care fund for the benefit of [Dale]" so as to not "displace public or private financial assistance that may otherwise be available to [him]." (Appellant's App., Ex. U at 12.) (*See also* Appellant's App., Ex. U at 13 (stating that "[t]his Trust is not for [Dale's] primary support. It is to supplement his supplemental care needs only").)

To that end, Katherine's structuring of the Trust precluded automatic, fixed transfers of income to Dale. (*See* Appellant's App., Ex. U at 13 (specifying that "Dale has no entitlement to the income or corpus of th[e] Trust, except as the Trustee, in its complete, sole, absolute, and unfettered discretion, decides to disburse").) Instead, Katherine provided the Trustee with substantial power in making disbursements to Dale: "the Trustee may act [as] unreasonably and arbitrarily as [I] could if [I] were living and in control of the [ ] funds." (Appellant's App., Ex. U at 13.) Furthermore, "[t]he Trustee's discretion in making non-support disbursements ... is final ... even if the Trustee elects to make no disbursements at all." (Appellant's App., Ex. U at 13.) Before making any disbursements, however, the Trustee was to consider Dale's "probable and possible future supplemental care needs" in addition to the resource/income limitations of all public assistance programs (in order to preserve Dale's eligibility for such funds). (*See* Appellant's App., Ex. U at 13–14.)

■ The Trust in this case is similar to other special needs/disability trusts in that it was designed to ensure that Dale's in-

come interest (i.e., the income he *may* receive) would not prohibit his access to either private or public assistance benefits. *See, e.g., State v. Hammans,* 870 N.E.2d 1071, 1080 (Ind.Ct.App.2007) (explaining that disability trusts are created to serve two purposes: 1) to benefit certain Medicaid recipients; and 2) to provide such recipients with supplemental care increasing the quality of their lives "after assistance from governmental and private agencies has been exhausted, and not to replace such assistance"). This does not mean, however, that Dale's interest in the Trust was perpetually set at zero; rather, it means that his interest in the Trust fluctuated and would be zero (i.e., he would not receive a disbursement) when income received would render him ineligible for federal/state aid. *Cf. Ind. Dep't of State Revenue v. Estate of Pickerill,* 855 N.E.2d 1082, 1084–86 (Ind.Tax Ct.2006) (holding that decedent's transfers of property made via a will were the basis for the inheritance

tax, not the transfers made under a family settlement agreement). Accordingly, on the date of Katherine's death, the precise value of each of the beneficiary's interests in the Trust was not readily ascertainable because their interests were contingent on the occurrence of other events and factors.[6] Therefore, this Court cannot say that the probate court erred when it determined the Estate's inheritance tax liability under Indiana Code § 6–4.1–6–4.

## CONCLUSION

For the above stated reasons, the Court AFFIRMS the probate court's denial of the Department's motion to correct error.

---

6. During the probate court's hearing, the Estate presented testimony and evidence demonstrating that Dale's medical/everyday needs would most likely continue to exceed his sole source of income (i.e., social security). (*See* Appellant's App., Ex. C at 29–32; Ex. J ¶ 7.) The Trustee testified that she had and would continue to make disbursements to satisfy Dale's needs for the remainder of his life. (*See* Appellant's App., Ex. C at 31–32.) The Trustee also testified that the Trust assets would most likely be completely consumed during Dale's lifetime. (*See* Appellant's App., Ex. C. at 31–32.) To the extent the Department claims that the introduction of this evidence was improper because it was beyond the "four corners" of the Trust, the Court must again disagree.

The probate court did not rely on this evidence to construe the Trust; the terms of the Trust clearly evidenced Katherine's intent. (*See* Appellant's App., Ex. B ¶ 2(a) (where the probate court finds that a contingency made it impossible to determine the beneficiaries' precise interests in the Trust).) Rather, the probate court relied upon the evidence to determine the manner in which the Trust assets would probably be distributed as required under Indiana Code § 6–4.1–6–4. *See supra* note 2.